UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GRACEY GENERAL PARTNERSHIP )
A Tennessee General Partnership, )
 )
    PLAINTIFF, ) No. _____
 )
VS. )
 )
CITY OF CLARKSVILLE, TENNESSEE )
 )
And )
 )
JOE PITTS, Mayor of the City of )
CLARKSVILLE, TENNESSEE )
 )
And )
 )
DAVID SMITH, Interim Head of the )
Department of Buildings and Codes of )
The City of Clarksville, TN )
 )
And )
 )
DEIDRE WARD, Director of the )
Department of Buildings and Codes of )
The City of Clarksville, TN )
 )
    DEFENDANTS. )
 )

## COMPLAINT

COMES NOW, the Plaintiff, Gracey General Partnership, by and through its undersigned counsel, and for its Complaint against the Defendants states as follows:

### NATURE OF COMPLAINT

1.    This is a civil action for declaratory injunctive relief and damages for violation of the Constitution of the United States. The Plaintiff, Gracey General Partnership, brings this action to compel the issuance of Demolition Permit, "DEMO-2023-000034," by the City of Clarksville

Department of Buildings and Codes, as otherwise allowed by the Ordinance(s) of the City of Clarksville, to demolish a single-family residence owned by Gracey, located at 517 Madison Street, Clarksville, Tennessee 37040. Gracey has a protected property right and distinct investment backed expectations. § 9.5.1(3) of the Clarksville Zoning Ordinance exempts single-family residences from those regulations of the "Downtown Urban Design Overlay District," and includes the approval of the demolition of single-family residence buildings. The Plaintiff contends the immediate issuance of the Demolition Permit to Gracey and "Disconnect Order" by the Defendants to Gracey are administrative and ministerial actions, entitle Gracey to receive the permits and requires no other application, review or consideration by Common Design Review Board of the City of Clarksville. Gracey was targeted and was denied the permit issuance, which is a violation of clearly established law and Gracey's right to substantive due process.

The Plaintiff's claim, in general, and as more particularly hereafter plead herein, is that it has, for an "improper motive" been purposedly delayed the issuant of permits, subjected to the reviews to heightened scrutiny, and the Defendants have conspired with others to prevent Gracey from securing the necessary permits. The Defendants' actions are an abuse of power, willful, malicious, selective, wrongful and they intentionally denied ministerial permits in furtherance of the City's agenda to preserve Gracey's alleged "historic" home. The Defendant, the City of Clarksville, has and continues to deprive Gracey of its substantive right to due process under the United States Constitution. Accordingly, the Defendants' actions entitle Gracey to declaratory relief, compensatory and punitive damages as well as its attorney's fees, costs and expenses.

## PARTIES

2. The Plaintiff, Gracey General Partnership ("Gracey") is a general partnership duly organized under the laws of the State of Tennessee. The Office of the Partnership is located at 227

2

2nd Avenue North, Suite 401, Nashville, Tennessee 37201. Gracey has two members, JDW II, a Tennessee Investment Service Trust, who is a resident and domiciliary of the State of Tennessee, and JPW II, a Tennessee Investment Services Trust, who is a resident and domiciliary of the State of Tennessee. Gracey is in the business of the development of urban housing in Clarksville, Tennessee.

3. The Defendant, The City of Clarksville, is an incorporated City in the State of Tennessee.

4. The Defendant, Joe Pitts, is the Mayor of the City of Clarksville, Tennessee, and is sued in his personal capacity and in his official capacity as Mayor of the City of Clarksville. At all times relevant herein, Joe Pitts was conducting himself under color of law pursuant to those rights, duties and also limitations of his actions as provided by the Ordinances of the City of Clarksville, Tennessee Code and the Constitution of the United States, as applied by the 14th Amendment.

5. The Defendant, David Smith, is believed to be acting as the Interim Head of the Department of Buildings and Codes for the City of Clarksville, Tennessee, and designated City housing official." By the application of Zoning Ordinance No.9.5.1(3) of the City of Clarksville, David Smith has legal authority and a ministerial duty to issue both demolition permits for single family residences located in a Central Business District (CBD) subject to the Downtown Urban Design Overlay Zoning District Ordinance and "Disconnect Order," allowing the CDE Light Band to disconnect the electrical services. David Smith is sued in both his personal capacity and his official capacity as Interim Head of the Department of Buildings and Codes for the City of Clarksville, Tennessee. At all times relevant herein, David Smith was conducting himself under color of law pursuant to those rights, duties and also limitations of his actions as provided by the

Ordinances of the City of Clarksville, Tennessee Code and the Constitution of the United States, as applied by the 14th Amendment.

6. The Defendant, Deidre Ward, is the Director of the Department of Buildings and Codes for the City of Clarksville, Tennessee, and designated City "housing official," but presently on leave of absence. By the application of Zoning Ordinance No. 9.5.1(3) of the City of Clarksville, Deidre Ward has legal authority and a ministerial duty to issue both demolition permits for single family residences located in a Central Business District Zone (CBD), subject to the Downtown Urban Design Overlay Zoning District Ordinance and "Disconnect Order," allowing the CDE Lightband to disconnect the electrical services. Deidre Ward is sued in both her personal capacity and her official capacity as Director of the Department of Buildings and Codes for the City of Clarksville, Tennessee. At all times relevant herein, Deidre Ward was conducting herself under color of law pursuant to those rights, duties and also limitations of her actions as provided by the Ordinances of the City of Clarksville, Tennessee Code and the Constitution of the United States, as applied by the 14th Amendment.

## JURISDICTION AND VENUE

7. The Plaintiff's claims are predicated upon, amongst other things, deprivation by the defendants of Plaintiff's rights to substantive due process and equal protection of the laws, in violation of the 14th Amendment to the U.S. Constitution and in violation of 42 USC §§1983. Jurisdiction is also conferred supporting claims for attorney's fees by 42 USC §§ 1988. Accordingly, jurisdiction in this case is predicated upon 28 USC §§1336 and 1343(a). Declaratory relief is authorized by 28 U.S.C. § 2201, §2202 and F.C.R.P. 57.

8. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. § 1391(b)(2), as the events and omissions that give rise to the Plaintiff's claim occurred in

Montgomery County, Tennessee. Further, the property that is the subject of this action is located in Montgomery County, Tennessee, which is located in the Middle District of Tennessee.

9. Montgomery County, Tennessee, is assigned to the Nashville Division of the Middle District of Tennessee.

## FACTS COMMON TO ALL CLAIMS

10. The Plaintiff, Gracey General Partnership, is the owner of a .995-acre tract of land located at 517 Madison Street, Clarksville, Tennessee, (also referred to as "the property"). Gracey acquired "the property" by a deed dated August 29, 2023, from George M. Terrell, which was recorded on August 29, 2023, in Book 2321, Page 1772, Register's Office for Montgomery County, Tennessee. The purchase price was $1,500,000. A copy of the August 29, 2023, deed is attached hereto as **Exhibit A**, the terms of which are incorporated. The public records of the Montgomery County Assessor of Property for "the property" are attached hereto as **Exhibit B**, the terms of which are incorporated herein by reference.

11. On August 29, 2023, the house located on the property had been used as a single-family residence by the prior owner, George M. Terrell, for what is believed to be 15 years.

12. Both prior to and at all times subsequent to August 29, 2023, "the property" was located in a Central Business District Zone (CBD Zone). A CBD Zone is described in § 3.3.19 of the City of Clarksville Zoning Ordinances. A copy of the City of Clarksville Zoning map depicting the location of the floating CBD Zone is attached hereto as **Exhibit C**, the terms of which are incorporated herein by reference. The house is in bad condition and is unfinanceable in its current form.

13. "The property" was not, and is not, located within the "H-1 historical district overlay zone" and is not subject to the jurisdiction of the review guidelines adopted by the

5

Regional Historic Zoning Commission implemented by the City of Clarksville in Chapter 9.3 of the Ordinance of the City of Clarksville. The house located on "the property" is also not subject to any of the additional restrictions on the present or future use as not being registered on the National Historical Register. The horse has no recognized association to local, state or national history.

14. "The property" was at all times to date located in the "Downtown Design Overlay District." The City of Clarksville "Downtown Urban Design Overlay District" is identified in Chapter 9.5 of Zoning Ordinance of the City of Clarksville. The Ordinance creating the Downtown Urban Design Overly District established the rights and duties of the owners of the properties located within the Floating Zoning District as set out in § 9.5. A copy of § 9.5 of the City of Clarksville Zoning Ordinance is attached hereto as **Exhibit D**, the terms of which are incorporated herein by reference.

15. All non-exempt property located in the "Downtown Urban Design Overlay District," is property subject to the "Design Review Guidelines and Standards" as binding on the Common Design Review Board established by the City of Clarksville for determining the appropriateness and approval of physical improvements and site plans.

16. § 9.5.1(3) of the "Downtown Urban Design Ordinance" specifically by its express terms exempt "single-family residence" from compliance with the Downtown Design Ordinance and the "Review Guidelines and Standards." If exempt, the application of § 9.5.1(3) requires no further action of an owner to demolish a single-family residence other than applying for a general demolition permit.

17. The single-family house is dilapidated. It is believed that the City of Clarksville has contended the vacant single-family house located on "the property" to be a "structure

6

Case 3:23-cv-01189   Document 1   Filed 11/13/23   Page 6 of 18 PageID #: 6

contributing to the historic downtown." No City of Clarksville Ordinance known to the Plaintiff confirms the City's interpretation of its own ordinance. The Defendants do not have discretion to deny the permits.

18. Gracey has no present development plan for "the property" for its future allowable uses as would be allowed in its current zoned district and the overlay district. Gracey has a vested investment backed property right in "the property." Subsequent to the demolition of the house, Gracey had the business opportunity to sell the property for a sum in excess of its cost, and end the costs incurred to maintain its house.

### SUBMISSION AND DENIAL FOR DEMOLITION PERMIT AND UTILITY DISCONNECT ORDER

19. The Department of Building and Codes (also referred to as the Department) is the proper City of Clarksville entity for the submission and approval of demolition permits. The Department's issuance of permits for which an application meets the objective standards established by the City is a ministerial function. The only known City of Clarksville Ordinance which identifies the issuance of a demolition permit as set out in the "Property Maintenance Code" definition in § 4-601(j) reads as follows:

> "Any owner, authorized agent, or contractor who desires to construct, enlarge, alter, repair, move, demolish or change a residential building or structure or to cause any such work to be done, shall first make application to the housing official and obtain the required permit therefor. Ordinary minor repairs may be made with the approval of the housing official without a permit, provided that such repairs shall not violate any of the provisions of this code."

The ordinance provides no objective description for the approval or rejection of the Demolition Permit which is not for ordinary minor repairs.

20. On or about August 30, 2023, Gracey completed the online form and electronically filed its request with the Defendant for the issuance of a Demolition Permit to be

issued by the Department of Buildings and Codes on behalf of the City of Clarksville. The electronic filing created, after receipt of the application, a Permit Number when received by the Department of Buildings and Codes being DEMO-2023-000034. A copy of the Demolition Permit Form is attached hereto as **Exhibit E**, the terms of which are incorporated herein by reference.

21. The Demolition Permit Request for houses located on "the property," being a single-family residence, was submitted to the Defendant, Ward, as the Director of the Department of Buildings and Codes by Gracey's managing partner, Jennifer Willoughby.

22. In response to Gracey's Demolition Permit Request, the Defendant, Ward, provided a written Response set out in an "email" dated August 30, 2023, to Jennifer Willoughby. A copy of the email response of Ward is attached hereto as **Exhibit F**, the terms of which are incorporated herein by reference. Wards' August 30th email confirmed that she would not issue the demolition permit for the house.

23. Ward purportedly interpreted Zoning Code § 9.5.4, Subparagraph 1 to first require that the demolition was required to be reviewed by the Regional Planning Commission Staff, and then be reviewed by the Board "for appropriateness for any property that is located within the Downtown Urban Design Overlay District." Ward confirmed that Gracey "must also first present your case and future plans to the Commission Design Review Board and the RPC prior to the issuance of a Demolition Permit." Prior demolition permits were issued by the Defendants for structures located in the Downtown Urban Design Overlay District without the interplay and approval by the Commission Design Review Board.

24. Approximately one hour after the Ward email was sent, Willoughby responded by email to Wards' interpretation of § 9.5.4 of the Ordinance by Ward in her email. Willoughby

again confirmed to Ward that the "the property," a single-family residence was, contrary to Ms. Wards' interpretation, exempt from any review or obligation. A copy of the August 30, 2023, responsive email from Willoughby to Ward is attached hereto as **Exhibit G,** both the terms of which are incorporated herein by reference. Ms. Willoughby reconfirmed that subsequent to the demolition of the single-family residence, it was the duty of Gracey at a later time to file an application for a "Design Review for which is built on the land after the house is removed."

25. Ms. Willoughby did not receive any response directly from Ward challenging Gracey's contention that it was by the unambiguous clear language of § 9.5.4 the house to be demolished was exempt from Ward issuance of the Demolition Permit and Ward's deferral of when or whether the demolition permit would be issued by the Department of Buildings and Codes.

26. In lieu of any substantive response from an individual from the Buildings and Codes Department, Ms. Willoughby then received an email two hours later on August 30, 2023, from the city attorney. The city attorney communicated that there would be no response to Ms. Willoughby's communication by him as Gracey was represented by counsel. A copy of the August 30, 2023, email responsive communication from city attorney, Lance Baker, to Ms. Willoughby is attached hereto as **Exhibit H**, the terms of which are incorporated herein by reference.

27. On August 30, 2023, Gracey's attorney, Mr. John Crow, and the city attorney, Mr. Baker, exchanged emails advising the others of their representation of their client for further communications.

28. By a series of emails exchanged between August 28 through August 30, 2023, Gracey requested the CDE Light Band (CDE), the City of Clarksville public supplier of

electricity utility services for "the property" to remove the meters and disconnect services for the property. After placing the disconnect request, Gracey was notified by a representative of CDE that the City's Buildings and Codes Department would first have to issue a "Disconnect Order." On August 30, 2023, by email Ms. Willoughby was notified by the CDE employee that "before we are able to proceed with removing all of our equipment, we do require a Demolition Permit be pulled by Buildings and Codes."

29. At 8:30 a.m., the next day, August 31, 2023, Ms. Willoughby, on behalf of Gracey, received an email from the CDE employee confirming communication he had with an unidentified representative of Buildings and Codes. The email confirmed the disconnection and removal of the CDE property would not be allowed. He stated as follows:

> "…they have advised us that they are not able to proceed with the demolition because the Clarksville-Montgomery County Historic Zoning Commission and the Common Design Review Board voted against demolition at 517 Madison Street. We can still disconnect service, but we would not be able to remove our equipment."

A copy of a series of emails from August 28, 2023, and 8:30 a.m., August 31, 2023, emails are attached hereto as **Exhibit I**, the terms of which are incorporated herein by reference.

30. No further communications were forthcoming from any representative of the City of Clarksville until September 8, 2023, wherein the city attorney forwarded by email to Gracey's attorney a letter of Jennifer Rudolph with a copy of Tennessee Department of Environment and Conservation (TDEC) May 1, 2019, letter to Mayor Pitts regarding the required asbestos compliance inspection in Clarksville prior to the demolition of buildings. A copy of the September 8th emails and the May 1, 2019, letter are attached hereto as **Exhibit J**, the terms of which are incorporated herein. To the best of Gracey's knowledge and information, Ms. Rudolph

10

Case 3:23-cv-01189   Document 1   Filed 11/13/23   Page 10 of 18 PageID #: 10

is a historical preservation activist opposed to the demolition of the residence located at 517 Martin Street, Clarksville, Tennessee.

31. Mr. Crow responded to the September 8, 2023, "asbestos abatement" inquiry forwarded by the city attorney by email on September 17th. Mr. Crow's communicated as follows:

> Lance,
>
> Please find attached the asbestos survey that my client had performed August 30, 2023. Please advise the status of the demolition of the property when you are able.
>
> John

A copy of the series of emails culminating in the September 17th email and a copy of the August 30, 2023, Asbestos Survey prepared by ECS for the home located at 517 Madison Street, Clarksville, Tennessee, is attached hereto as **Exhibit K**, the terms of which are incorporated herein by reference. A fair characterization of the Executive Summary of ECS of its Report is that a state licensed inspector employee of ECS performed an asbestos assessment on August 28, 2023. The only asbestos related materials identified to be removed consisted of an 8' x 8' beige vinyl floor. The 8' x 8' beige vinyl floor's lawful removal is adequately addressed by ECS. The report confirms the dilapidated state of the house created by the prior owner.

32. By letter to Jennifer Willoughby dated September 26, 2023, Defendant, Smith, as Interim Director, reaffirmed the City's position to deny any consideration of the issuance of the Design Permit until after a final decision by the Common Design Review Board. A copy of the September 26, 2023, letter is attached hereto as **Exhibit L**, the terms of which are incorporated herein by reference.

33. Emails were then again exchanged between October 3rd and October 6th addressing Mr. Smith's position on the City of Clarksville by Mr. Crow and Mr. Baker, and more

11

Case 3:23-cv-01189    Document 1    Filed 11/13/23    Page 11 of 18 PageID #: 11

particularly the City's interpretation of its own Zoning Code provisions as arbitrary, capricious and unenforceable in this matter. No response to Mr. Crow's request to confirm the legal authority to compel Gracey to create, prepare and submit its final development plan to the Commission Review Board as a § 9.5.1(3) exempt property, was yet to be provided by the City. Mr. Baker finally advised Mr. Crow by telephone that the City had taken a broad view of the Ordinance and the demotion permit would be denied. Mr. Baker finally advised Mr. Crow by telephone that the City had taken a broad view of the Ordinance and the Demolition Permit would be denied. A copy of the October emails exchanged by Mr. Crow and Mr. Baker are attached hereto as **Exhibit M**, the terms of which are incorporated herein.

34. The refusal by the Defendants to issue the Demolition Permit and the required utility services "Disconnect Order" from the Department of Buildings and Codes has taken from Gracey the business opportunity to sell "the property" after the demolition of the house, for development by a third party.

35. The denial of the Demolition Permit and "Disconnect Order" requires Gracey to incur the additional cost of utility expenses, insurance, liability exposure, property tax, monitoring of the lot and dilapidated building, repairs on the structure to preclude the house use by the homeless, for drugs and vandalism.

36. Gracey is a qualified applicant who has tendered to the Defendants all required documents required by all existing Ordinances of the City of Clarksville as a prerequisite for the issuance of Demolition Permit, DEMO-2023-000034, to Gracey and a "Disconnect Order" on behalf of Gracey to the CDE Light Band allowing it to disconnect utility services. The refusal to issue permits is the result of an improper motive created by public opposition, social media and active pressure for historic preservation of the dilapidated house.

37. The Defendants have conspired to delay and prevent Gracey from the necessary approval of permits from other governmental agencies.

38. The decision of whether to grant a permit is an administrative act under clearly defined Tennessee law, as a nonjudicial ministerial action. The Defendants' conduct has deprived Gracey of a constitutionally protected property interest by their actions, which were and continue to be arbitrary and an abuse of power.

## COUNT I

### VIOLATION OF THE ZONING CODE

39. That as a result of the foregoing facts, it is the contention of Gracey that the City of Clarksville Zoning Code and more specifically, § 9.5.1(3) of the code exempts "single family residences" from compliance with the "Downtown Design Ordinance" and the "Review Guidelines and Standards," and requires no further action of Gracey, as the owner, to the entitlement to receive both a "Demolition Permit" and a "Disconnect Order" by the Defendants.

40. Gracey, given the facts in this matter, is entitled to a Declaration that its proposed demolition of the house located at 517 Madison Street, Clarksville, Tennessee, and disconnection of the electrical server to be a nonjudicial ministerial act not requiring any further action on behalf of Gracey and not binding of Gracey.

41. That, in accordance with 42 USC 1983 and upon the facts and circumstances of this case as hereinafter set forth, the Plaintiff, Gracey, is entitled to declaratory relief.

## COUNT II

### DEPRIVATION OF PROPERTY AND LIBERTY INTERESTS PURSUANT TO AN UNCONSTITUTIONALLY VAUGE ACT

42. The law to be applied by the Defendants' actions decision to consider and then deny the issuance of Demolition Permit, being "DEMO-2023-000034," to Gracey is set out in the City of Clarksville's "Property Maintenance Code," § 4-601(j).

43. § 4-601(j) of the "Property Maintenance Code," provides no definitive objective standard for a "housing official" to consider as a condition precedent for the issuance of a Demolition Permit other than only for the applicant to first make an application.

44. To the extent § 4-601(j) allows a "housing official" to consider any other standard of review for the issuance of a Demolition Permit, the Ordinance is unconstitutionally vague and void for vagueness.

45. The City's enforcement of any other standard for the demolition of its vacant deteriorating house located at 517 Madison Street, Clarksville, Tennessee, has caused, and will continue to cause, and deprive Gracey of its property and liberty interest.

46. Accordingly, Gracey has suffered, and will continue to suffer, the deprivation of its vested rights under the United States Constitution to the use of its property and the Court should declare that § 4-601(j) provide no objective basis for a "housing official" to deny "DEMO-2023-000034" to Gracey.

## COUNT III

### THE ISSUANCE OF INJUCTIVE RELIEF TO REMEDY THE PLAINTIFF'S DENIAL OF ITS RIGHT TO "SUBSTANTIVE DUE PROCESS"

47. That, as a result of the foregoing facts, the Plaintiff, Gracey, has demonstrated a legitimate claim of entitlement to the issuance of a Demolition Permit and the Utility Disconnect Order for utilities and demolition of its house located at 517 Madison Street, Clarksville,

Tennessee. The delay and denial of the Defendants' ministerial function has precluded Gracey's sale of the property and/or site clearance necessary for future development.

  a. Gracey has substantial vested property interest in the issuance of the Demolition Permit and Utility Disconnect Order;

  b. The Defendants have acted with an improper motive in an arbitrary and/or irrational manner to deprive Gracey of its clear investment interests;

  c. Such acts by the Defendants violate Gracey's substantive due process rights conferred upon it by the 14th Amendment of the United States Constitution in violation of 42 USC § 1983.

48. That, as a result thereof, Plaintiff, Gracey, has been unable to and is prevented from demolishing its vacant, dilapidated house, causing recurring monthly costs and precludes the properties' alternative sale as a location for development by a third-party developer's preparation of its own site development plan.

49. The concerted actions of the Defendants have and continue to violate the Plaintiff, Gracey's substantive right of process. Gracey is entitled to both damages and injunctive relief compelling the Defendants forthwith issue to Gracey the two (2) permits.

### COUNT IV

### CLAIM FOR DAMAGES PURSUANT TO PLAINTIFF'S "DEPRIVATION OF EQUAL PROTECTION OF THE LAW"

50. That, as a result of the foregoing facts, the Plaintiff, Gracey, has been subjected to unequal treatment of the law under color of law and deprived of the equal protection of the law in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution in that:

a. Compared with other similar situations involving other property owners in the City of Clarksville seeking a Demolition Permit and a Utility Disconnect Permit, the Plaintiff, Gracey, has been adversely selectively treated. The Defendants have no rational basis for the discriminatory treatment of Gracey;

b. Such adverse selective treatment is predicated on impermissible consideration by Defendants, in violation of Gracey's constitutional rights and further based on Defendants' malicious and bad faith intent to cause injury to the Plaintiff, Gracey, and its property; and,

c. Such unequal treatment and adverse selective treatment violates Plaintiff, Gracey's, rights afforded them and will continue to suffer from the Defendants' unequal treatment of law pursuant to 42 USC 1983 et. seq.

51. That, as a result thereof, Plaintiff, Gracey, has been unable to, and is prevented from demolishing it vacant, dilapidated house, causing it recurring monthly costs and prevents the property's alternative sale as a location for development by a third-party developer's own site development plan.

52. The concerted actions of the Defendants violate the Plaintiff, Gracey's right of process for which it is entitled to both damages and injunctive relief compelling the Defendants forthwith issue Gracey the two (2) permits.

WHEREFORE, the Plaintiff, Gracey General Partnership, in consideration of the foregoing violations of Gracey's rights as guaranteed by the United States Constitution seeks the following relief:

A. That the Court declare that the application of the Clarksville Zoning Ordinance require its interpretation by the Defendants that the issuance of the two (2) permits sought by

Gracey, and denied by the Defendants, are "exempt" by the application of § 9.5.1(3) from any review at this time by the Common Design Review Board;

      B.     That the Court enter a mandatory injunction compelling the immediate issuance by the Defendants to the Plaintiff necessary for the demolition of the house located at 517 Madison Street, Clarksville, Tennessee, "Demolition Permit" No. DEMO-2003-000034 and the "Disconnect Order" permit, allowing the discontinuance of electric services and existing equipment from the property by the CDE Lightband;

      C.     That the Court enter a final judgment in the Plaintiff's favor against all Defendants, jointly and severally, for compensatory and punitive damages, exclusive of interests and costs;

      D.     That the Court award the Plaintiff its costs and attorney's fees expended and cost herein incurred as allowed by the application of 42 U.S.S. § 1988;

      E.     For any other declaratory injunctive and/or other equitable relief to which the Plaintiff appears entitled; and,

      F.     That the Plaintiff receive a trial by jury on all issues allowable as a matter or right.

RESPECTFULLY SUBMITTED this 13th day of November, 2023.

                                                /s/Daniel N. Thomas
                                                Daniel N. Thomas (BPR No. 021310)
                                                THOMAS, ARVIN & ADAMS, PLLC
                                                1209 S. Virginia Street, P.O. Box 675
                                                Hopkinsville, Kentucky  42241-0675
                                                (270) 886-6363 (Telephone)
                                                (270) 886-8544 (Facsimile)
                                                dthomas@thomasandarvin.com
                                                *Attorneys for GRACEY GENERAL PARNERSHIP*

## VERIFICATION

I, Jennifer Willoughby, on behalf of Gracey General Partnership, being first duly sworn, do swear under oath and based on personal knowledge that the facts set forth above are true and correct to the best of my knowledge, information and belief.

_____

State of Tennessee

County of  Davidson

    Before me, John David Carter, personally appeared Jennifer Willoughby, with whom I am personally acquainted (or proved to me on the basis of satisfactory evidence), and who, upon sworn oath, acknowledged (1) himself to be the Managing Member of Gracey General Partnership , (2) that he executed the foregoing instrument for the purpose therein contained, and (3) that the statements set forth above are true and correct to the best of his knowledge, information, and belief.

    Witness my hand and seal, at office in Davidson County, Tennessee, this 10th day of November, 2023.

_____
Notary
My Commission Expires: May 7, 2024