**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **GRACEY GENERAL PARTNERSHIP, A Tennessee General Partnership,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**CITY OF CLARKSVILLE, TENNESSEE, et al.,**<br><br>**Defendants.** | **Case No. 3:23-cv-01189**<br><br>**District Judge Aleta A. Trauger**<br>**Magistrate Judge Alistair E. Newbern** |

**RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY**

Defendants City of Clarksville, Tennessee (hereinafter, the "City"), Mayor Joe Pitts, David Smith, and Deidre Ward hereby submit their Response in Opposition to Plaintiff Gracey General Partnership's Motion to Disqualify Batson Nolan, PLC (hereinafter, the "Firm"). For the reasons discussed specifically below, the Defendants respectfully request an Order denying the Motion.

## I. BACKGROUND

For the past 40 years (approximately), if not longer, the Firm has represented the City (and its various employees, agents, and elected officials) in state and federal civil litigation matters, as well as other matters. See Nolan Aff. at ¶ 3, Goodson Aff. at ¶ 3, and Ellis Aff. at ¶ 9 (all Affidavits filed via Notice of Filing). In fact, undersigned defense counsel and member of the Firm, Jeff T. Goodson (hereinafter, "Mr. Goodson"), is the City's former Deputy City Attorney and, in such capacity, was the City's chief civil litigator and head of the City's litigation division for nearly a decade (from 2012 until 2021), and has continued representing the City in civil litigation matters since he joined the Firm in the spring of 2021. See Goodson Aff. at ¶ 3. Mr. Goodson's

representation of the City notwithstanding, the Firm has a long and well-established relationship with the City, having served as the City's legal counsel since at least the 1980s. See Nolan Aff. at ¶ 3. The Firm is representing the City (and its various employees, agents, and elected officials) in several civil cases now pending before this Court. See Goodson Aff. at ¶ 3, and Nolan Aff. at ¶ 3.

In late November of 2023, the City contacted the Firm regarding the Firm's potential engagement on behalf of the City and the other Defendants in this federal lawsuit (hereinafter, the "Case"). See Goodson Aff. at ¶ 4, Nolan Aff. at ¶ 4, and Ellis Aff. at ¶ 10. At that particular time, the Firm was representing the City in numerous matters, to include civil litigation matters and real property acquisition matters (and, as stated previously, the Firm now continues to represent the City and its agents in a number of active matters). Id. Thereafter, on November 29, 2023, in accordance with the Firm's routine practice and custom, and prior to accepting any engagement whatsoever on behalf of the Defendants in the Case, the Firm conducted an internal conflict check in order to identify and evaluate any potential conflicts of interests. Id. ***The internal conflict check revealed that the Firm has never at any time (or in any matter) represented Gracey General Partnership, a Tennessee General Partnership (hereinafter, "Gracey GP"), who is the sole Plaintiff in the Case.*** Id.

Also, because the Complaint in the Case identifies Jennifer Willoughby (hereinafter, "Mrs. Willoughby") as the "managing partner" of Gracey GP and references her in several paragraphs, the search parameters for the Firm's aforementioned internal conflict check included not only any potential matters relating to the Firm's representation of Gracey GP (which there are/were no such matters), but also any potential matters relating to the Firm's representation of Mrs. Willoughby. See Goodson Aff. at ¶ 4, Nolan Aff. at ¶ 5, and Ellis Aff. at ¶ 10. While the internal conflict check identified various matters for which Mrs. Willoughby (and/or certain entities in which she holds

an interest) had engaged the Firm at one time or another in the past, the members of the Firm investigated, and the Firm thereby confirmed that, at the time of the internal conflict check and at the time of the Firm's acceptance of engagement in the Case, there were no open files or matters (i.e., uncompleted legal projects and/or engagements) for which the Firm had been retained to represent Mrs. Willoughby or any legal entity with whom she is, or has been, associated. Id. In fact, as of the date of the submission of this Response, the same holds true – there are no open files or matters for which the Firm has been retained to represent Mrs. Willoughby or any legal entity with whom she is, or has been, associated. Id. And, again, Gracey GP is not, and has never been, a client of the Firm. Id.

Only after devoting significant time and ample consideration to the matter, and after satisfying themselves that no conflict of interest exists under the Tennessee Rules of Professional Conduct (or otherwise) that would preclude the Firm from representing the Defendants, did the members of the Firm agree to formally accept engagement in the Case.[1] See Goodson Aff. at ¶ 10, Nolan Aff. at ¶ 8, and Ellis Aff. at ¶ 13. Thereafter, on March 7, 2024, on behalf of the Defendants, the Firm filed a Motion to Dismiss (Docs. 11 and 13-1) Gracey GP's Complaint with prejudice. The Motion to Dismiss remains pending and, rather than filing a Response to the Motion to Dismiss, Gracey GP filed the instant Motion to Disqualify the Firm (Doc. 16) on March 22, 2024 – even though Gracey GP is not, and has never been, a client of the Firm, and despite the fact that the Firm has never received from Mrs. Willoughby or her husband any confidential information that relates in any way to, or could possibly have any bearing upon, the Case. See Goodson Aff. at ¶¶ 4, 5, and 9, Nolan Aff. at ¶¶ 5 and 7, and Ellis Aff. at ¶¶ 7, 10, and 12.

[1] Certainly, taking on the responsibility of representing the Defendants in the Case was not something the Firm took lightly or without conducting appropriate due diligence. See Goodson Aff. at ¶ 10, Nolan Aff. at ¶ 8, and Ellis Aff. at ¶ 13.

As discussed in detail below, the Court should deny the Motion to Disqualify, as Gracey GP has not carried (and cannot carry) its burden of demonstrating disqualification is warranted.

## II. ARGUMENT

### A. Motions to Disqualify, Generally

"***Motions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary.***" In re Valley-Vulcan Mold Co., 237 B.R. 322, 337 (6th Cir. 1999) (emphasis added). Disqualification is an "extreme sanction," and an attorney should ***only*** be disqualified if there is a "'reasonable possibility that some specifically identifiable impropriety' actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." El Camino Res., Ltd. v. Huntington Nat'l Bank, 623 F.Supp.2d 863, 883 (W.D. Mich. 2007) (quoting Woods v. Covington County Bank, 537 F.2d 804, 810 (5th Cir. 1976)). See also Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d 222, 224 (6th Cir. 1988) (observing that "courts must be sensitive to the competing public policy interests of preserving client confidences and of permitting a party to retain counsel of his choice").

Indeed, ***"a party is presumptively entitled to the counsel of his choice," and that entitlement "may be overridden only if 'compelling reasons' exist."*** In re Polyurethane Foam Antitrust Litig., 2015 U.S. Dist. LEXIS 172911, *9 (N.D. Ohio 2015) (emphasis added) (quoting In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003) (quoting Texas Catastrophe Property Ins. Ass'n v. Morales, 975 F.2d 1178, 1181 (5th Cir. 1992)). See also In re Tapp, 2020 Bankr. LEXIS 1199, *14 (Bankr. N.D. Ohio 2020) (refusing to disqualify counsel and holding: "Disqualification of a party's chosen counsel is an extreme measure to be used only when other remedial measures are inadequate."). "***[T]he ability to deny one's opponent the services of his chosen counsel is a***

***potent weapon" and, therefore, "[m]otions for attorney disqualification should be viewed with extreme caution for they can be misused as techniques of harassment.***" Manning v. Waring, Cox, James, Sklar & Allen, 849 F.2d at 224 (emphasis added); Freeman v. Chicago Musical Instrument Co., 689 F.2d 715, 722 (7th Cir. 1982) (emphasis added). See also Eon Streams, Inc. v. Clear Channel Communs., 2007 U.S. Dist. LEXIS 23950, *3 (E.D. Tenn. 2007) (courts should view motions to disqualify "with extreme caution because [they] can easily be misused as a harassment technique"). ***The movant bears "the burden of providing that opposing counsel should be disqualified***." McKinney v. McMeans, 147 F.Supp.2d 898, 900 (W.D. Tenn. 2001) (emphasis added) (citing Bartech Indus. v. Int'l Baking Co., 910 F.Supp. 388 (E.D. Tenn. 1996)).

In Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, the Sixth Circuit held that, in deciding a motion to disqualify counsel for an alleged conflict of interest, a district court should determine whether: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, 900 F.2d 882, 889 (6th Cir. 1990).

As the discussion below readily illustrates, Gracey GP's arguments for disqualification are meritless, and Gracey GP cannot carry its heavy burden of demonstrating that the Firm should be disqualified, considering especially that Gracey GP cannot satisfy even the first prong of the Dana Corp. (i.e., an attorney-client relationship) or, for that matter, any prong of the test.

## B. Gracey GP Cannot Satisfy the First Prong of the Dana Corp. Test and, Therefore, Lacks Standing To Pursue Disqualification.

Under Dana Corp., ***the threshold requirement is the existence of an attorney-client relationship***. Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, 900 F.2d at 889 (requiring

a past attorney-client relationship between the moving party and the attorney it seeks to disqualify). See also Bialik v. Raddatz, 2012 U.S. Dist. LEXIS 98953, *5 (W.D. Mich. 2012) (recommending denial of motion to disqualify where movant could not satisfy Dana Corp.'s "threshold requirement of the existence of an attorney-client relationship between plaintiff and the [opposing party's] firm"). Where the party moving to disqualify an attorney is/was not the attorney's client, the movant lacks standing to pursue disqualification, and the motion to disqualify should be denied on that basis. See State Farm Mut. Auto. Ins. Co. v. Elite Health Ctrs., Inc., 2019 U.S. Dist. LEXIS 104998, *4 (E.D. Mich. 2019) ("Generally, ***courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification***.") (internal quotation marks removed; emphasis added); Frey v. Prior, 1991 U.S. App. LEXIS 28681, *1 (6th Cir. 1991) (plaintiff lacked standing to pursue disqualification, because no attorney-client relationship existed between him and the law firm or the attorney); Winchester v. Educ. Mgmt. Corp., 2010 U.S. Dist. LEXIS 60660, *6 (W.D. Ky. 2010) ("Here, the Court concludes ***Plaintiff as a non-client litigant does not have standing to disqualify opposing counsel***.") (emphasis added); The White Family Cos., Inc. v. Dayton Title Agency, Inc., 284 B.R. 238, 245 (S.D. Ohio 2002) (appellants did not have standing to seek disqualification of opposing counsel, because they were not former clients); Dawson v. City of Bartlesville, 901 F.Supp. 314, 316 (N.D. Okl. 1995) (denying motion to disqualify, because plaintiff was not a former client of opposing counsel); In re Sandahl, 980 F.2d 1118, 1121-22 (7th Cir. 1992) (vacating district court's order to disqualify defense counsel, because plaintiff was not a former client of defense counsel and, thus, did not have standing to bring the motion to disqualify); In re Yarn Processing Patent Validity Litig., 530 F.2d 83, 88 (5th Cir. 1976) (explaining that "[a]s a general rule, courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification"); FMC Techs. Inc. v. Edwards, 420

F.Supp.2d 1153, 1156-57 (W.D. Wash. 2006) (observing that the majority view "is that ***only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current or former client***") (emphasis added).

According to the "entity rule," where an attorney represents an organization, to include a corporation or a partnership, the client is the organization – *not* the organization's individual owners, members, constituents, etc. McKinney v. McMeans, 147 F.Supp.2d at 901 (citing Jesse v. Danforth, 485 N.W.2d 63, 66 (Wis. 1992) and ABA Model Rule of Professional Conduct 1.13(a), which provides that an attorney "employed or retained by an organization represents the organization"). See also Tenn. Sup. Ct. R. 8, RPC 1.13(a) (providing in pertinent part as follows: "A lawyer employed or retained by an organization represents the organization . . . ."). "[T]he clear purpose of the entity rule was to enhance the corporate lawyer's ability to represent the best interests of the corporation without automatically having the additional . . . burden of representing the corporation's constituents." Jesse v. Danforth at 67.

In JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC, relying not only on the entity rule, but also on the consensual nature of the attorney-client relationship, as well as Tennessee statutory law regarding partnerships, this Court found that the plaintiffs failed to demonstrate an attorney-client relationship, holding in pertinent part as follows:

> The attorney-client relationship is consensual and, significantly, it arises only when *both the attorney and the client have consented* to its formation . . . Moreover, ***a partnership is an entity distinct from its partners***. Tenn. Code Ann. § 61-1-201(a). Thus, a lawyer who represents a partnership represents the entity rather than the individual partners . . . .

JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC, 2020 U.S. Dist. LEXIS 183176, *33 (M.D. Tenn. 2020) (internal quotation marks and some internal citations omitted; emphasis on "both the attorney and the client have consented" in original; additional emphasis added). As

referenced in JRS Partners, Tenn. Code Ann. § 61-1-201(a) provides as follows: "***A partnership is an entity distinct from its partners.***" (emphasis added). See also Quality Mfg. Sys. v. R/X Automation Solutions, Inc., 2016 U.S. Dist. LEXIS 63743, *8 (M.D. Tenn. 2016) (quoting Tenn. Code Ann. § 61-1-201(a)).

Significantly, the previously-referenced "entity rule" and the aforementioned Tennessee statute providing that "[a] partnership is an entity distinct from its partners" are manifestations of the "well-stablished principle of law that ***[the] corporate form must be respected***." Crossing at Eagle Pond, LLC v. Lubrizol Corp., 346 F.Supp.3d 1048, 1055 (E.D. Mich. 2018) (emphasis added) (citing Seasword v. Hilti, Inc., 449 Mich. 542, 547, 537 N.W.2d 221, 224 (1995)). See also Miller v. United States, 831 F.Supp. 1347, 1351 n. 1 (M.D. Tenn. 1993) (observing the "corporate form must be respected").

In the case at bar, ***Gracey GP – the entity that is the sole Plaintiff in the Case – is not, and has never been, a client of the Firm***. See Goodson Aff. at ¶ 4, Nolan Aff. at ¶¶ 3 and 4, and Ellis Aff. at ¶¶ 10 and 11. While the Firm, no doubt, has represented Mrs. Willoughby, her husband, and some of their various other companies over the past 10 years (approximately), the Firm has never represented Gracey GP, a legal entity whose existence must be respected as separate and distinct from that of its individual partners, to include Mrs. Willoughby – and, therefore, the Firm's prior representation of Mrs. Willoughby (or her husband or their other companies) does not and cannot equate to the Firm's representation of Gracey GP. Id. In fact, the Firm did not form Gracey GP, and the Firm did not form JDW II or JPW II – the two trusts which, according to the Corporate Disclosure Statement (Doc. 6), are the two members of Gracey GP.[2] See Ellis Aff. at ¶ 5. See also Compl. (Doc. 1) at ¶ 2 (JDW II and JPW II are the two members).

[2] In rather misleading fashion, in her Affidavit (Doc. 16-1, Pg ID #s 348 – 350), Mrs. Willoughby repeatedly utilizes the broad-brush label "Gracey" when referring to her and/or her husband's various legal entities (and possibly to their

Moreover, ***the sworn Complaint specifically pleads that Gracey GP retained local attorney and sole practitioner, John Crow – not the Firm*** – as Gracey GP's attorney well before the filing of the Case, ***and the sworn Complaint repeatedly identifies Mr. Crow as "Gracey's attorney."*** See Compl. (Doc. 1) at ¶ 27 (stating, "***Gracey's attorney, Mr. John Crow***") (emphasis added), ¶ 30 (again, calling Mr. Crow "***Gracey's attorney***" and referring to pre-suit communications/negotiations Mr. Crow conducted with the City Attorney's Office on Gracey GP's behalf) (emphasis added), and ¶ 31 (alleging that Mr. Crow, as Gracey GP's counsel, communicated via electronic mail with the City Attorney). See also Compl. (Doc. 1) at ¶ 26 (alleging the City Attorney elected not to communicate directly with Mrs. Willoughby concerning the matter, as he had learned that Gracey GP "was represented by counsel," Mr. Crow), Exhibits K and M to Compl. (Docs. 1-11 and 1-13), which are electronic messages to/from Mr. Crow as Gracey GP's counsel, and Pg ID#s 107 and 108 (Mr. Crow repeatedly identifying Gracey GP as "***my client***") (emphasis added). As the Complaint and its exhibits clearly demonstrate, Gracey GP sought out and retained counsel regarding the underlying dispute that gave rise to the Case, but that particular counsel was John Crow, *not* the Firm.

Also, when Gracey GP elected to file suit against the Defendants, Gracey GP retained the Kentucky law firm of Thomas, Arvin & Adams, PLLC – *not* the Firm. See Compl. (Doc. 1) at Pg ID# 17. See also Doc. 16-2. In addition, neither Mrs. Willoughby, nor her husband, ever contacted the Firm concerning Gracey GP's underlying dispute with the City surrounding the issuance of a demolition permit for Dunlop Mansion, or concerning any matter relating to or giving rise to the

individual endeavors, as well) when, meanwhile, Gracey GP (a Tennessee general partnership) is not only a legal entity separate and distinct from its partners (see Tenn. Code Ann. § 61-1-201(a)), but it is also a legal entity separate and distinct from Mrs. Willoughby's and her husband's other legal entities, such as their active and inactive limited liability companies. Significantly, Mrs. Willoughby's Affidavit does not specifically assert that the Firm has ever represented the current Plaintiff and movant, Gracey GP. See generally Doc. 16-1. The explanation for that particular omission is obvious: The Firm has never represented Gracey GP.

Case. See Ellis Aff. at ¶ 8. Instead, Gracey GP contacted (and communicated and/or consulted with) attorney John Crow and the attorneys at Thomas, Arvin & Adams, PLLC concerning the matters giving rise to and/or now comprising the Case. See Compl. (Doc. 1) at ¶¶ 27, 30, and 31, and at Pg ID# 17. See also Doc. 16-2. As a result, to the extent Mrs. Willoughby's subjective belief and/or intent are even relevant to the instant Motion, neither Mrs. Willoughby, nor Gracey GP itself, can reasonably contend that either of them believed or intended that the Firm was Gracey GP's counsel, whether for purposes of the Case, the underlying dispute giving rise to the Case, or any other matter. See Bartech Indus. v. International Baking Co., 910 F.Supp. at 393 (finding "scant evidence that an attorney-client relationship existed between the corporate plaintiff . . . and [law firm]" where separate attorneys were retained by plaintiff in the lawsuit and, meanwhile, plaintiff's CEO allegedly "considered [the law firm's members] were still his attorneys on other matters," which "certainly permits an inference that [the CEO] compartmentalized his legal representation and sought out attorneys for specific needs"). Regardless of Mr. Crow's or Thomas, Arvin & Adams' undisputed engagement on behalf of Gracey GP, the Firm has never represented that entity. See Goodson Aff. at ¶ 4, Nolan Aff. at ¶¶ 3 and 4, and Ellis Aff. at ¶¶ 10 and 11.

In sum, Gracey GP cannot satisfy Dana Corp.'s threshold requirement of the existence of an attorney-client relationship (between Gracey GP and the Firm) and, consequently, Gracey GP lacks standing to pursue the Motion to Disqualify. The Court, therefore, should deny the Motion.

**C. Its Lack of Standing Aside, Gracey GP Cannot Demonstrate This Is the Same or Substantially Related Matter As Any Prior Engagement.**

The standard for professional conduct of lawyers practicing before this Court incorporates the Tennessee Rules of Professional Conduct. See M.D. Tenn. Local Rule 83.01(c)(6). Concerning an attorney's duties to former clients, Rule 1.9(a) of the Tennessee Rules of Professional Conduct provides as follows:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person ***in the same or substantially related matter*** in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

See Tenn. Sup. Ct. R. 8, RPC 1.9(a) (emphasis added). Comment 3 to RPC 1.9 defines "substantially related" in pertinent part as follows: "***Matters are 'substantially related' for purposes of this Rule if they involve the same transaction or legal dispute*** or other work the lawyer performed for the former client . . . ." (emphasis added). See also Comment 3(a) to RPC 1.9 (providing in pertinent part as follows: "***Matters are substantially related if they involve the same transaction or legal dispute or other work the lawyer performed for the former client***.") (emphasis added).

Similar to the analysis required by RPC 1.9(a), the second prong of the Dana Corp. test requires a district court to determine whether the subject matter of any past attorney-client relationship is "***substantially related***" to the subject matter at hand (i.e., the particular subject matter or project for which disqualification is now sought). Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, 900 F.2d at 889 (emphasis added). Under this second prong, when determining whether the attorney-client relationships are "substantially related," a district court looks to "the general type of information that the potentially conflicted lawyer would have been exposed to in a normal or typical representation of the type that occurred with the now-adverse client." Bowers v. Ophthalmology Grp., 733 F.3d 647, 651 (6th Cir. 2013). "What confidential information could have been imparted involves considering what information and facts ought to have been or would typically be disclosed in such a relationship. Consequently, ***the representations are substantially related if they involve the same client and the matters or transactions in question are relevantly interconnected*** . . . ." Id. (emphasis added).

The pertinent facts clearly demonstrate that Gracey GP – even if it could satisfy the attorney-client relationship prong of the Data Corp. test (which it cannot satisfy that prong) – cannot satisfy the "substantially related" prong of the Data Corp. test, and likewise cannot satisfy the "same or substantially related matter" component of RPC 1.9(a). To illustrate, Mrs. Willoughby never contacted the Firm concerning the subject matter involved in the Case (i.e., Gracey GP's efforts to obtain a permit to demolish Dunlop Mansion), as Gracey GP retained local attorney and sole practitioner, John Crow, concerning that specific matter, instead of the Firm.[3] See Ellis Aff. at ¶ 8, and Complaint (Doc. 1) at ¶¶ 27, 30, and 31. See also discussion contained in Section II(B) of this Response. Gracey GP retained Mr. Crow well before the filing of the Complaint, as evidenced by his pre-suit negotiations with the City on behalf of Gracey GP, during which Mr. Crow attempted to convince the City that it was allegedly misinterpreting and/or misunderstanding its own local Code provisions and attempted, more generally, to obtain a demolition permit for Dunlop Mansion, which is located on said property. See Compl. (Doc. 1) at ¶¶ 27, 30, and 31, and Exhibits K and M thereto (Docs. 1-11 and 1-13). Consequently, if there is an attorney who has represented Gracey GP in the same or substantially related matter as the matter(s) now at issue in the Case, it is Mr. Crow, *not* any attorney or member of the Firm.

Also, the Firm did not assist Gracey GP with the purchase of the real property located at 517 Madison Street in Clarksville, Tennessee (which is the specific real property relating to the Case), or with Gracey GP's efforts to obtain a permit from the City (or from any local governmental board) to demolish Dunlop Mansion. See Ellis Aff. at ¶ 6. In fact, the Firm only

[3] Contrary to the assertion in her Affidavit (Doc. 16-1, at ¶ 5, Pg ID# 349), Mrs. Willoughby has not exclusively used the Firm for her or her companies' Central Business District (or "CBD") real estate development projects, as evidenced by the fact that she and Gracey GP retained local attorney, John Crow, relating to the specific property which is the subject of the Case (i.e., 517 Madison Street) and relating specifically to Gracey GP's efforts to obtain a permit to demolish Dunlop Mansion. See Compl. (Doc. 1) at ¶¶ 27, 30, and 31, and Exhibits K and M (Docs. 1-11 and 1-13).

became aware of Gracey GP's purchase of the real property at 517 Madison Street, and of Gracey GP's efforts and/or desire to obtain a permit to demolish Dunlop Mansion, in late November of 2023 upon the delivery of the Complaint to the Firm for potential representation of the City and the other Defendants in the Case. Id. See also Goodson Aff. at ¶ 5. Furthermore, Mrs. Willoughby's primary point of contact at the Firm, Matthew J. Ellis (hereinafter, "Mr. Ellis"), does not recall having any specific, or even general, conversations or communications with Mrs. Willoughby or her husband relating to obtaining a demolition permit for *any* structure whatsoever (including the subject structure, Dunlop Mansion), as that is not a governmental process with which Mr. Ellis is familiar. See Ellis Aff. at ¶ 6. Likewise, Mr. Ellis has never given Mrs. Willoughby or her husband any advice concerning the obtaining of such a permit as, again, he is not familiar with the pertinent process. Id.

Mr. Ellis' prior representation of Mrs. Willoughby and/or her husband and/or their companies encompassed various transactional matters, including landlord tenant issues, real estate transactions, and general corporate matters, but had nothing whatsoever to do with obtaining demolition permits from the City (or any governmental entity), had nothing whatsoever to do with local Code provisions pertaining to the issuance of such permits, had nothing whatsoever to do with the real property that is the subject of the Case (i.e., 517 Madison Street) and, overall, had nothing whatsoever to do with the matters at issue or conceivably at issue in the Case. See Ellis Aff. at ¶ 3. Also, while Mr. Ellis has represented one of Mrs. Willoughby's former limited liability companies (now inactive and administratively dissolved) in a real estate purchase contract dispute, and has represented another one of Mrs. Willoughby's former limited liability companies (also now inactive and administratively dissolved) in a construction dispute, those two disputes (like the aforementioned transactional work) had nothing whatsoever to do with obtaining demolition

permits from the City (or any governmental entity), had nothing whatsoever to do with local Code provisions pertaining to the issuance of such permits, had nothing whatsoever to do with the real property that is the subject of the Case (i.e., 517 Madison Street) and, overall, had nothing whatsoever to do with the matters at issue or conceivably at issue in the Case. See Ellis Aff. at ¶ 3. Likewise, Lauren S. Meadows (hereinafter, "Mrs. Meadows"), another member of the Firm, and the only other current member of the Firm who is referenced in the instant Motion (Doc. 16 at Pg ID# 346, and Doc. 16-1 at Pg ID# 349) as having provided legal services to Mrs. Willoughby or her husband in the past, did indeed provide legal services to Mrs. Willoughby and her husband several years ago – but those services related exclusively to the couple's personal estate planning needs. See Meadows Aff. at ¶ 3.

All-told, the Firm's prior representation of Mrs. Willoughby and/or her husband and/or their other companies cannot reasonably be construed as "substantially related" to matters at issue in the Case, and certainly were not the same matter(s). Therefore, because Gracey GP cannot satisfy the "substantially related" prong of the Dana Corp. test, or the "same or substantially related matter" component of RPC 1.9(a), the Court should deny the Motion to Disqualify. Further, even if Gracey GP's previously-discussed inability to prove an attorney-client relationship with the Firm did not independently merit denial of the Motion due to lack of standing (which it does), Gracey GP's lack of an attorney-client relationship with the Firm completely undermines any attempt to satisfy the "substantially related" prong of the Dana Corp. test. See Bowers v. Ophthalmology Grp. at 651 ("***[T]he representations are substantially related if they involve the same client*** and the matters or transactions in question are relevantly interconnected . . . .") (emphasis added).

**D. Gracey GP Cannot Satisfy the Third Prong of the Dana Corp. Test, As the Firm Does Not Possess Any Confidential Information Relevant To the Case.**

The third prong of the Dana Corp. test requires a court to determine whether the attorney for the nonmovant acquired confidential information from the party seeking disqualification. Dana Corp., 900 F.2d at 889. As the Sixth Circuit decisions illustrate, this third prong requires a district court to determine not merely whether counsel received confidential information, but whether any confidential information that was received is now ***relevant*** to the current lawsuit or other matter in which disqualification is sought. See, e.g., Bartech Indus. at 394 (District Court for Eastern District of Tennessee denying motion to disqualify where movant did not demonstrate that "confidential information was disclosed to opposing counsel ***related to this lawsuit***") (emphasis added); Six L's Packing Co. v. Beale, 2011 U.S. Dist. LEXIS 160166, *5 (M.D. Tenn. 2011) (citing and relying on Dana Corp. while observing that "Comment 3c to Rule 1.9 makes clear that . . . 'knowledge of specific facts gained in a prior representation ***that are relevant to the matter in question*** ordinarily will preclude such representation.'") (emphasis added); Lamson & Sessions Co. v. Mundinger, 2009 U.S. Dist. LEXIS 37197, *15 (N.D. Ohio 2009) (discussing Dana Corp. and identifying the pertinent issue as "whether the confidential information acquired by [the firm] is in any way ***relevant*** to the current litigation") (emphasis in original); Best v. Mobile Streams, Inc., 2013 U.S. Dist. LEXIS 3313, *13 (S.D. Ohio 2013) (addressing whether counsel for nonmovant obtained "[k]nowledge of specific facts gained in a prior representation ***that are relevant*** to the matter in question") (emphasis added); D.C.H. v. Brannon, 2014 U.S. Dist. LEXIS 204793, *12 (W.D. Tenn. 2014) ("Based on . . . the principles articulated in Dana Corp. . . . , the court finds that Smith did not obtain ***the kind of confidential information that would materially advance [nonmovant]'s position*** in the present lawsuit.") (emphasis added); Barkley v. City of Detroit, 204 Mich. App. 194, 204 (1994) (focusing on whether there was "confidential information

received from the former client ***that is in any way relevant to representation of the current client***") (emphasis added) (citing General Elec. Co. v. Valeron Corp., 608 F.2d 265, 267 (6th Cir. 1979)). See also Comment 3(c) to RPC 1.9 (providing in pertinent part as follows: "Only when such information will be directly in issue or of unusual value in the subsequent matter will it be independently relevant . . . .").

Applying these principles to the present Motion to Disqualify, Gracey GP cannot satisfy the third prong of the Dana Corp. test. Since approximately 2013, on a project-by-project basis, the Firm (primarily through its member, Mr. Ellis) has represented Mrs. Willoughby's and/or her husband's various entities in multiple transactional matters, including landlord tenant issues, real estate transactions, and general corporate matters.[4] See Ellis Aff. at ¶ 3. However, the Firm has not received, whether in the course of the aforementioned engagements or otherwise, and is not in possession of, *any* confidential information that would have any relevance whatsoever to the Case. See Ellis Aff. at ¶ 7, Goodson Aff. at ¶¶ 5, 8, and 9, Nolan Aff. at ¶ 7, and Meadows Aff. at ¶ 4. Further, while Mr. Ellis is aware of confidential information that he has received in previous years from Mrs. Willoughby and/or her husband concerning their personal finances, he and the Firm are not in possession of (nor has Mr. Ellis or the Firm ever received) *any* confidential information relating to the real property at issue in the Case, or relating to Gracey GP's efforts to obtain a permit to demolish Dunlop Mansion, or relating in any way or having any relevance whatsoever to the subject matter at issue in the Case. See Ellis Aff. at ¶ 12, Goodson Aff. at ¶¶ 5, 8, and 9, Nolan Aff. at ¶ 7, and Meadows Aff. at ¶ 4. Financial information is, of course, fluid and unstable and, thus, may be "rendered obsolete by the passage of time." See Comment 3(c) to RPC 1.9.

In addition, although Mr. Ellis has been engaged, from time to time, by multiple lending

---

[4] Mr. Ellis' practice at the Firm is primarily focused on real estate and secured transactions. See Ellis Aff. at ¶ 2. On limited occasions, Mr. Ellis works on civil litigation matters relating to real estate and secured transactions. Id.

institutions concerning financing matters (i.e., loans, loan modifications, etc.) relating to some of Mrs. Willoughby's and/or her husband's various entities, the assertion in the Motion (see Doc. 16 at Pg ID# 339) that Mr. Ellis allegedly "provided a Gracey related company a title opinion" in January of 2024 and thereby purportedly received confidential information is an incorrect and baseless assertion. See Ellis Aff. at ¶ 4. In January of 2024, Mr. Ellis answered a question (via electronic mail) that he received directly from ALTRA Federal Credit Union (a nonprofit financial cooperative that provides financial services) regarding certain loan modifications he had performed previously. Id. However, neither Mr. Ellis, nor any member of the Firm, prepared or provided a title opinion for Mrs. Willoughby (or for any entity in which she or her husband hold an interest), during or as a part of the aforementioned January 2024 electronic correspondence. Id. Instead, Mr. Ellis was merely answering a question facilitated and tendered by ALTRA Federal Credit Union, and he was not providing legal representation to Mrs. Willoughby, her husband, or any of her/his/their companies during that correspondence, and he did not receive or send *any* confidential information during that correspondence.[5] Id. Of course, even if Mr. Ellis had received confidential information during the aforementioned electronic correspondence with ALTRA Federal Credit Union (which he did not), any such information (such as personal financial information, hypothetically) would not be relevant to the specific matters at issue in the Case.

Moreover, it is plainly evident that the Case is merely a vehicle by which Gracey GP seeks to challenge the local government's denial of a permit to demolish a certain residential structure, Dunlop Mansion, located at 517 Madison Street in Clarksville, Tennessee. More specifically, as stated in the Defendants' pending Motion to Dismiss and supporting Memorandum (Docs. 11 and 13-1), the Complaint is, in essence, a mis-filed, late-filed petition for common law writ of

[5] ALTRA Federal Credit Union's question pertained to a matter that had already been concluded months earlier. Id.

certiorari, which seeks to challenge the local government's denial of a demolition permit on the basis that such denial was allegedly illegal or arbitrary. See Compl. (Doc. 1) generally and at ¶¶ 38 and 47(b). Also, a primary aspect of the Complaint is Gracey GP's contention that the City's interpretation of its own local Code provisions (relating to issuance of demolition permits) is different from Gracey GP's interpretation of those same Code provisions. Id. at ¶¶ 23 and 24 and generally. In particular, despite the fact that Gracey GP (prior to filing the Complaint) appeared before the Common Design Review Board in July of 2023 in support of an application to demolish Dunlop Mansion and then filed an appeal (to the local Regional Planning Commission) of the Board's denial of that application[6], Gracey GP now alleges in this lawsuit that the pertinent local Code provisions – according to Gracey GP's interpretation of them – purportedly do *not* require consideration and approval of the Common Design Review Board. According to the allegations in the Complaint (to include ¶¶ 16, 17, 38, 39, and 40), the City allegedly does not have any discretion to deny a demolition permit, and allegedly bears a "ministerial" duty to issue such a permit whenever one is requested, because (according to Gracey GP's interpretation of the pertinent local Code) Gracey GP's demolition application is purportedly "exempt" from review and approval of the Common Design Review Board. See Compl. (Doc. 1) at ¶¶ 1, 16, and 24.

In an Affidavit (Doc. 16-1) in support of the instant Motion to Disqualify, Mrs. Willoughby states that she and/or her husband have shared information with the Firm concerning their and/or their various companies' "business affairs" and "past and future business plans and operations," and she further states that the Firm purportedly has "communications with . . . banks, financial

[6] Gracey GP's above-mentioned appearance before the Common Design Review Board and its subsequent appeal to the local Regional Planning Commission are matters of public record, as evidenced by certified copies of the following: the Agenda from the July 24, 2023 meeting of the CDRB (Doc. 12-4); the official Minutes from that meeting (Doc. 12-5); and the Regional Planning Commission's receipt of Gracey GP's appeal (and confirmation of assignment of appellate case number) (Doc. 12-7).

representatives, architects and other professionals" for purposes of Mrs. Willoughby's and/or her husband's and/or their companies' business affairs in the City's Central Business District. See Aff. (Doc. 16-1) at ¶¶ 5, 6, and 7 (Pg ID# 349). However, any such alleged information, even if it were shared with the Firm, concerning Mrs. Willoughby's and/or her husband's and/or their companies' "business affairs," "past and future business plans and operations," business philosophies, real estate development plans, etc., and even any discussions with Mr. Ellis pertaining to alleged "permit problems" generally (if such discussion indeed occurred), have nothing whatsoever to do with the issues at hand in the Case.[7] Those issues are identified and described in the previous paragraph of this Response, are readily obvious from a review of the Complaint, and can be succinctly identified as follows: whether the local government's denial of a permit to demolish Dunlop Mansion was an arbitrary or illegal decision, whether the local government's interpretation and/or utilization of its own Code is legally sound (as opposed to unconstitutional or otherwise injurious to Gracey GP), and whether certain portions of the local Code are unconstitutional. See generally Complaint (Doc. 1). Of course, those issues are purely *matters of law* and are not reliant upon, and do not call for the introduction, utilization, or consideration of *any* information (confidential or otherwise) that the Firm may have received from Mrs. Willoughby or her husband. Nevertheless, the Firm has not received any confidential information that is relevant to the Case.[8] See Ellis Aff. at ¶¶ 7 and 12, Goodson Aff. at ¶ 5, Nolan Aff. at ¶ 7, and Meadows Aff. at ¶ 4.

[7] Notably, Mrs. Willoughby, on behalf of Gracey GP, has already shared publicly Gracey GP's specific development plans for the real property that is the subject of the Case. In particular, the specific and ultimate intentions/plans for that property, following any eventual demolition of Dunlop Mansion now located thereon, include the construction of "multi-use" apartments. See Transcript of July 24, 2023 mtg. of the Common Design Review Board (Doc. 12-10) at p. 11, l. 6 – 11 (Mrs. Willoughby publicly announcing Gracey GP's plans).

[8] While the Motion to Disqualify states that it is "conceivable that Batson Nolan's attorneys, Matthew Ellis and Lauren Safley, may be called as a witness [sic] in this proceeding" (see Doc. 16 at Pg ID# 346), it is well-settled that, "[f]or a lawyer to be a necessary witness, his testimony must be relevant, material and unobtainable elsewhere." Rothberg v. Cincinnati Ins. Co., 2008 U.S. Dist. LEXIS 45969, *2 (E.D. Tenn. 2008). See also Droste v. Julien, 477 F.3d 1030,

In any event, "***general information about business practices does not raise confidentiality concerns that mandate disqualification***." Ancient Brands, LLC v. Planet Stuff, LLC, 2018 U.S. Dist. LEXIS 191748, *9 (E.D. Mich. 2018) (internal citation omitted; emphasis added) (citing Atmosphere Hospitality Mgmt. Servs., LLC v. Royal Realties, LLC, 28 F.Supp.3d 692, 698 (E.D. Mich. 2014) and Marks One Car Rental, Inc. v. Auto Club Group Ins., 2014 U.S. Dist. LEXIS 198938, *3 (E.D. Mich. 2014)). See also Int'l Paper Co. v. Lloyd Mfg. Co., 55 F.Supp. 125, 16 (N.D. Ill. 1982) (***general knowledge of a company's inner workings acquired during another representation is not sufficient to warrant disqualification***); Bartech Indus. v. International Baking Co., 910 F.Supp at 394 ("More general legal representation can be relevant to a later litigation, but only if the later litigation fairly puts a[t] issue the entire background of the movant.") (quoting U.S.F.L. v N.F.L., 605 F.Supp. 1448, 1459 (S.D. N.Y. 1985)); D.C.H. v. Brannon, 2014 U.S. Dist. LEXIS 204793 at *13 (where movant made "vague allegations" that counsel was familiar with its "daily operations" and "pattern of conduct," district court held as follows: "[T]he court again is not persuaded that this kind of unidentified, general information, even if known by [counsel], could materially benefit [the nonmovant] in the present lawsuit. The court is not inclined to grant a motion to disqualify [the nonmovant]'s choice of counsel on such vague allegations."); Haworth, Inc. v. Wickes Mfg. Co., 1994 U.S. Dist. LEXIS 11580, *7 (W.D. Mich. 1994) (finding that the information acquired by the law firm was much more akin to general information than to specific knowledge of facts pertaining to the current lawsuit and, therefore, the prior representations were not substantially related to the issues involved in the lawsuit).

In sum, Gracey GP cannot satisfy the third prong of the Dana Corp. test and, more

---

1035 n.7 (8th Cir. 2007) (An attorney is a "necessary witness" only if "there are things to which he will be the only one available to testify."). As Mr. Ellis' and Mrs. Meadows' Affidavits plainly reveal, they do not possess any information that is relevant or material to the Case, or any information that is unobtainable elsewhere. See generally Ellis Aff. and Meadows Aff..

specifically, cannot bear its burden of demonstrating the Firm has received any confidential information that would be relevant to the Case. Indeed, the Affidavits in support of this Response clearly rebut any conclusion or presumption as to the type of information that would normally have been received during the Firm's prior representation of Mrs. Willoughby and/or her husband and/or their companies. See Comment 3 to RPC 1.9 (providing in pertinent part as follows: "Any conclusion or presumption concerning the type of confidential factual information that would normally have been obtained in the prior representation may be overcome or rebutted by the lawyer by proof concerning the information actually received in the prior representation."). The Court, therefore, should deny the Motion to Disqualify.

Further, "as the third prong of the *Dana* [*Corp.*] test demonstrates, courts are primarily concerned with the possibility of the attorney's disloyalty and breach of faith towards one who had previously entrusted him with confidences." MJK Family LLC v. Corporate Eagle Mgmt. Servs., 676 F.Supp.2d (E.D. Mich. 2009) (internal quotation marks removed) (quoting Dalrymple v. Nat'l Bank & Trust Co. of Traverse City, 615 F.Supp. 979, 983 (W.D. Mich 1985)). However, "***[i]n the absence of a confidential relationship between counsel and the movant[], there can be no breach of faith requiring disqualification***." Id. (emphasis added) (quoting Dalrymple at 983). Accordingly, Gracey GP's previously-discussed inability to demonstrate an attorney-client relationship with the Firm continues to completely undermine its efforts to disqualify the Firm, regardless of the specific information received by the Firm during its prior representation of Mrs. Willoughby and/or her husband and/or their other companies (i.e., entities other than Gracey GP, an entity the Firm has not represented).

**E. Gracey GP's Contentions Regarding the Firm's Time Entries Are Baseless.**

On March 26, 2024, Gracey GP filed a "Notice of Filing Exhibit to Motion to Disqualify"

and attached a collective exhibit containing the Firm's invoices and time records relating to the Case (which were obtained as public records). See Docs. 17 and 17-1. In the Notice, Gracey GP misguidedly and baselessly contends that Mr. Goodson's time entry – "Reviewed title docs from property across the street from Dunlop Mansion (owned by J.W.)" – allegedly "confirm[s] Batson Nolan's use of the otherwise confidential 'IT' records of Gracey and Jennifer Willoughby in the possession of Batson Nolan . . . ." See Doc. 17 at Pg ID# 360, and Doc. 17-1 at Pg ID# 369 (containing the referenced time entry from Jan. 9, 2024). However, the January 9, 2024 time entry, "Reviewed title docs from property across the street from Dunlop Mansion (owned by J.W.)," is a reference solely to Mr. Goodson's examination of a certain Special Warranty Deed (and the two exhibits attached thereto) that he obtained from his own search of public records, which he conducted in order to better acquaint himself with the subject geographic area. See Goodson Aff. at ¶ 8. More specifically, that particular January 9, 2024 time entry is a reference solely to Mr. Goodson's examination of the Special Warranty Deed recorded as Instrument #1288711 (at Vol. 2036, Pgs. 1938 – 1941), together with Exhibits A and B attached to the Deed (at Pgs. 1942 – 1944), as recorded with the Register's Office for Montgomery County, Tennessee. Id. Mr. Goodson obtained and printed that Special Warranty Deed and its Exhibits from the U.S. Title Search Network (via its website at ustitlesearch.net). Id. Accordingly, the phrase "title docs," as used in the January 9, 2024 time entry, is a reference solely to public records Mr. Goodson was able to obtain from an outside source – *not* to any records that are kept or maintained by the Firm. Id. In any event, regardless of who keeps/maintains the Special Warranty Deed, the January 9, 2024 time entry is not a reference to any confidential document or confidential communication and, instead, is merely a reference to a public record, the Special Warranty Deed. Id.

Similarly, the Notice (Doc. 17) misguidedly contends that Mr. Goodson's reference to "IT"

records in a time entry dated February 19, 2024 allegedly "confirm[s] Batson Nolan's use of the otherwise confidential 'IT' records of Gracey and Jennifer Willoughby in the possession of Batson Nolan . . . ." See Doc. 17 at Page ID# 360, and Doc. 17-1 at Page ID# 375. However, the "IT" records which are referenced in the February 19, 2024 time entry are public records (under the Tennessee Public Records Act) that are kept and maintained by the City, *not* the Firm. See Goodson Aff. at ¶ 9. Those records were retrieved from the City's in-house public records by the City's Information Technology or "IT" Department at counsel's request so that he could adequately prepare to represent the Defendants in the Case. Id. Many of the referenced "IT" records are emails that Gracey GP attached as exhibits to its own Complaint. See e.g., Docs. 1-6, 1-8, 1-10, and 1-11. Regardless, the reference to "IT" records in the February 19, 2024 time entry (or in any other time entry) is a reference solely to public records kept and maintained by the City – *not* the Firm. Id. Likewise, the reference in the February 19, 2024 time entry to "IT" records is not a reference to the Firm's information technology files, nor is it a reference to any file or document kept or maintained by the Firm. Id. Further, none of the time entries in Doc. 17-1 are references to confidential (or even nonconfidential) information kept or maintained by the Firm, nor has Mr. Goodson ever received any confidential (or even nonconfidential) information from Mrs. Willoughby, her husband, or their companies, considering especially that he has never met or corresponded with Mrs. Willoughby or her husband and has never reviewed any of their closed matters or files. Id.

Gracey GP's above-discussed baseless, if not reckless, assertions concerning the Firm's time entries not only underscore the fact that Gracey GP cannot prove the third prong of the Dana Corp. test, but also amplify the speculative, meritless, and abusive nature of the present Motion.

**F. The Court Should Give Great Weight To Defendants' Right To Counsel of Their Choice.**

As referenced earlier in this Response, ***"a party is presumptively entitled to the counsel of his choice," and that entitlement "may be overridden only if 'compelling reasons' exist."*** In re Polyurethane Foam Antitrust Litig., 2015 U.S. Dist. LEXIS 172911 at *9 (emphasis added) (quoting In re BellSouth Corp., 334 F.3d 941, 961 (11th Cir. 2003) (quoting Texas Catastrophe Property Ins. Ass'n v. Morales, 975 F.2d 1178, 1181 (5th Cir. 1992)). See also related discussion in Section II(A) of this Response. For the past 40 years (approximately), if not longer, the Firm has represented the City (and its various employees, agents, and elected officials) in state and federal civil litigation matters, as well as other matters. See Goodson Aff. at ¶ 3, Nolan Aff. at ¶ 3, and Ellis Aff. at ¶ 9. In fact, undersigned defense counsel, Mr. Goodson, is the City's former Deputy City Attorney and, in such capacity, was the City's chief civil litigator and head of the City's litigation division for nearly a decade (from 2012 until 2021), and has continued representing the City in civil litigation matters since he joined the Firm in the spring of 2021. See Goodson Aff. at ¶ 3. Mr. Goodson's representation of the City notwithstanding, the Firm has a long and well-established relationship with the City, having served as the City's legal counsel since at least the 1980s. See Nolan Aff. at ¶ 3. The Firm is presently representing the City (and its various employees, agents, and elected officials) in several civil cases now pending before this Court. See Goodson Aff. at ¶¶ 3 and 4, and Nolan Aff. at ¶¶ 3 and 4.

The Defendants respectfully submit that they are entitled to representation in this lawsuit by their counsel of choice, and would respectfully request that the Court give great weight not only to that general entitlement, but also to the City's longstanding and close relationship with undersigned defense counsel in particular. Candidly, the present Motion to Disqualify is an example of the all-too-common abuse of disqualification motions and, more specifically, is merely

being used to harass, to avoid and/or delay responding to the Motion to Dismiss (Doc. 11), to otherwise delay this proceeding, to deprive Defendants of their long-time choice of counsel, etc.

Considering these arguments, together with all the other arguments contained in this Response, the Court should enter an Order denying the Motion to Disqualify.

## III. CONCLUSION

Based on the foregoing, the Defendants respectfully request the entry of an Order denying Gracey GP's Motion to Disqualify.

Respectfully submitted,

BATSON NOLAN, PLC

By: /s/ Jeff T. Goodson
**JEFF T. GOODSON, #023648**
**D. MARK NOLAN, #015859**
2675 Townsend Court, Suite A
Clarksville, TN 37043
Telephone: (931) 436-9750
Facsimile: (931) 436-9750
jgoodson@batsonnolan.com
dmnolan@batsonnolan.com
*Attorneys for the Defendants*

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing has been served on the parties by the U.S. District Court Electronic Filing System and/or has been mailed, by U.S. Mail, to the following:

Daniel N. Thomas
THOMAS, ARVIN & ADAMS, PLLC
1209 S. Virginia Street, P.O. Box 675
Hopkinsville, Kentucky 42241-0675
(270) 886-6363 (Phone)
(270) 886-8544 (Fax)
dthomas@thomasandarvin.com
*Attorney for Plaintiff*

on this the 4th day of April, 2024.

/s/ Jeff T. Goodson
Jeff T. Goodson