IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| GRACEY GENERAL PARTNERSHIP,<br>A Tennessee General Partnership,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF CLARKSVILLE,<br>TENNESSEE, *et al.*,<br><br>  Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 3:23-cv- 01189<br>Judge Aleta A. Trauger |

**MEMORANDUM**

Before the court is the plaintiff's Motion to Disqualify Batson Nolan, the law firm that represents the defendants. (Doc. No. 16.) The defendants oppose the motion. As set forth herein, the court finds that, in the interest of preventing the appearance of impropriety, the plaintiff's motion should be granted.

**I.     RELEVANT FACTS**

Plaintiff Gracey General Partnership ("Gracey" or "Gracey GP") is a Tennessee general partnership, the only two members of which are "JDW II, a Tennessee Investment Trust Service," and "JPW II, a Tennessee Investment Services Trust." (Doc. No. 1 ¶ 2; Doc. No. 6.) Gracey filed suit on November 13, 2023 against the City of Clarksville (the "City") and three individuals, in both their individual and official capacities: Joe Pitts, Mayor of Clarksville; David Smith, Interim Head of the City of Clarksville Department of Buildings and Codes; and Deidre Ward, Director of the City of Clarksville Department of Buildings and Codes (collectively, the "individual defendants"). (Doc. No. 1 ¶¶ 3–6.)

Gracey's Complaint brings claims related to the plaintiff's attempts to obtain a demolition permit for a "dilapidated" and "unfinanceable" house located on an approximately one-acre tract of land owned by Gracey at 517 Madison Street, Clarksville, Tennessee (the "Property"). (Doc. No. 1 ¶¶ 10–11.) The Property is located in the Central Business District ("CBD") Zone of downtown Clarksville, as described by City of Clarksville Zoning Ordinances § 3.3.19. Gracey alleges that, through its "managing partner, Jennifer Willoughby" (Doc. No. 1 ¶ 21),[1] it submitted an online application for issuance of a demolition permit for the house on the Property on August 30, 2023 and complied with all the requirements for obtaining such a permit. (*Id.* ¶¶ 20, 21.) Gracey alleges that it has been denied a demolition permit and maintains that the City and the individual defendants denied Gracey's application for a demolition permit for improper reasons and in violation of the applicable ordinances. According to Gracey, the applicable zoning ordinances collectively require "no further action of an owner to demolish a single-family residence" within the Downtown Urban Design Overlay District other than simply applying for a general demolition permit and that the defendants "do not have discretion to deny the permit" in this situation. (*Id.* ¶¶ 16, 17.)

Gracey alleges that the denial of the demolition permit deprived it of a business opportunity to sell the Property for development by a third party and has caused it to incur additional costs and expenses to maintain the Property. (*Id.* ¶ 34.) Gracey further alleges that the defendants "conspired to delay and prevent Gracey from the necessary approval of permits from other governmental agencies." (*Id.* ¶ 37.) Gracey asserts that, because the issuance of the requested demolition permit

---

[1] The identification of Jennifer Willoughby as Gracey's "managing partner" somewhat conflicts with assertions in the Complaint and in the plaintiff's Business Entity Disclosure Statement, both of which state that the only two members of Gracey are Tennessee Investment Services Trusts, JDW II and JPW II. (Doc. No. 1 ¶ 2; Doc. No. 6.) It appears that Jennifer Willoughby alleges that she was acting as an agent of Gracey.

should have been a non-discretionary, ministerial action, the defendants have engaged in an arbitrary abuse of power that has deprived it of a constitutionally protected property interest. (*Id.* ¶ 38.)

Based on these allegations,[2] the Complaint sets forth claims under 42 U.S.C. § 1983, asserting that the City's alleged violation of its own Zoning Code and its enforcement of an "unconstitutionally vague" "Property Maintenance Code" resulted in the violation of Gracey's substantive due process rights, right to equal protection, and vested property interests. Gracey seeks injunctive and declaratory relief as well as compensatory and punitive damages.

The defendants responded to the Complaint by filing a Notice of Appearance by attorney Jeff T. Goodson, with the law firm Batson Nolan, PLC ("Batson" or the "Firm") (Doc. No. 10), and a Motion to Dismiss (Doc. No. 11). Rather than responding to the Motion to Dismiss, Gracey filed this Motion to Disqualify, in which it argues that (1) Batson has "continually served since 2013" through January 2024 "as the law firm for . . . Gracey, its related and associated companies and [its] beneficial owners, Jennifer Willoughby and Joseph Willoughby," such that there is "a past attorney-client relationship" between Gracey and Batson; (2) that Batson worked on matters "substantially related" to the present dispute; and (3) in the context of its former representation, Batson attorneys "acquired and were exposed to intimate knowledge of Gracey, its beneficial owners, specific business model, practices, investors, and other confidential information" relevant to this dispute, which gives Batson "a distinct and impermissible advantage in the present action." (Doc. No. 16, at 2, 5.)

_____

[2] The plaintiff also complains about the defendants' denial of a Disconnect Order that would have allowed the "CDE Light Band" to disconnect electrical services at the Property. (*See* Complaint ¶ 5.) At this juncture at least, the failure to approve disconnection of electrical services seems entirely dependent on the denial of the demolition permit and does not merit separate consideration.

In support of these assertions, Gracey has submitted the Affidavit of Jennifer Willoughby, in which Willoughby avers:

(1) she and her husband, Joseph Willoughby, are the "beneficial owners" of various related business entities, including Gracey GP, as well as Gracey Court LLC, Cumberland Terrace LLC, 227 2nd Avenue N LLC, The Willoughby Revocable Trust, JPW LLC, Bright and Tight LLC, COCO GP, ZAZU GP, and 518 GP, two of which entities (she does not identify which) were formed by Batson (Doc. No. 16-1, Willoughby Aff. ¶ 2);

(2) the sole business in which Gracey and its "affiliated business entities" have been engaged is the "acquisition of distressed relate estate" within Clarksville's CBD zone (including properties located at 611 Madison Street, 712 Main Street, 123 Franklin Street, and 334 Main Street) and developing the properties, either by demolishing and building new multi-family housing or by converting existing buildings to mixed residential/commercial use (*id.* ¶¶ 3–4);

(3) "Gracey and its affiliated companies" have used Batson and its attorneys exclusively since 2013 for "each company's legal and business affairs related to its CBD real estate development," including in contested litigations and settlement negotiations, and the Willoughbys sought individual estate and tax planning services from John Crow and another Batson attorney, Lauren Safley, until Crow left Batson in 2019 (*id.* ¶¶ 5, 7);

(4) Batson formed and "now represents JPW LLC," a real estate brokerage company for which Jennifer Willoughby is a licensed Tennessee broker and agent, closing real estate transactions referred to it by Willoughby and assisting in the "acquisition, financing, mortgaging and sale of real estate for all of [the Willoughbys'] affiliated companies" (*id.* ¶ 6);

(5) every aspect of the Willoughbys' "related companies' past and future business plans and operations" has been "confidentially shared with [their] attorneys" at Batson (*id.* ¶ 6);

(6) Batson is authorized to and continued through January 2024 to have direct, independent communications" with the Willoughby entities' "banks, financial representatives, architects and other professions for the purpose of its [sic] CBD business" (*id.* ¶ 7); and

(7) Jennifer Willoughby "specifically recall[s] discussing permit problems with Batson Nolan attorney Matthew Ellis" (*id.* ¶ 8).

Willoughby further states that she conferred with her current attorneys in drafting the March 12, 2024 letter from her attorneys to Batson to request that the Firm withdraw from

representing the defendants in this case. She attests that the chronology and the contents of that letter are "true and accurate" to the best of her knowledge. (*Id.* ¶ 9.) In that letter, also submitted as an exhibit to the plaintiff's Motion to Disqualify, current counsel for Gracey asserts that Batson knew or should have known when it undertook to represent the defendants in this case that "Gracey General Partnership and its partners, Jennifer Willoughby and Joseph Willoughby are both current (as late as January 2024) and prior clients of your firm." (Doc. No. 16-2, at 1.) It lays out with somewhat more specificity than Willoughby's Affidavit the chronology of the Firm's representation of various Willoughby entities, beginning in 2013, and the type of work performed. (*See* Doc. No. 16-2, at 1–3.)

Batson declined Willoughby's request that the firm withdraw from representing the defendants in this case in a letter dated March 14, 2024. (Doc. No. 16-3.) In this letter, Batson concedes that Jennifer Willoughby and certain entities she owns or controls are former clients of the Firm, but it specifically denies that Willoughby herself or any Willoughby entity is a current client, that Batson has ever represented Gracey GP in any matter, and that Batson has ever represented Willoughby or one of her entities in any matter that is related to the current matter. In support of the defendants' Response in Opposition to the Motion to Disqualify (Doc. No. 22), the defendants filed the Affidavits of Batson attorneys Jeff Goodson, Mark Nolan, Matthew Ellis, and Lauren Safley Meadows (Doc. Nos. 22-1 through 22-4). Goodson and Nolan, who are the defendants' counsel of record in this case, note that the City has been a client of the Firm since the 1980s and that the Firm currently represents the City in at least four pending civil cases. They also attest to the steps the Firm took prior to accepting the current engagement, including conducting an internal conflict check and additional "investigation" by and discussion among members of the Firm, to confirm that neither Jennifer Willoughby nor any entity with which she has been

associated is a current client and that Gracey GP has never been a client of the Firm. (Doc. No. 22-1, Goodson Aff. ¶ 2, 4; Doc. No. 22-2, Nolan Aff. ¶ 2, 4–6.) Goodson and Nolan also attest that they have never spoken with or performed any work for Jennifer Willoughby, her husband, or any of their business entities. (Goodson Aff ¶ 5; Nolan Aff. ¶ 7.) Goodson affirmatively states that he has personally examined the Complaint and can confirm that this matter is not related to any prior matters in which the Firm represented Willoughby and that, even assuming, as Willoughby claims, that the Firm has had knowledge of her, her husband's, and/or their other companies' "business affairs, "past and future business plans and operations," "business philosophies, real estate development plans, etc.," and "even any discussions with Mr. Ellis pertaining to alleged 'permit problems' generally (if such discussion indeed occurred)," this information has "nothing whatsoever to do with the issues at hand" in this case. (Goodson Aff. ¶ 7.)

Matthew Ellis, also a member of Batson, states that he first became acquainted with Jennifer Willoughby in 2013 and has been engaged to perform legal work for her on a "project-by-project basis" since that time. (*Id.* ¶ 3.) Over the years he has represented Willoughby's "various entities in multiple transactional matters, including landlord tenant issues, real estate transactions, and general corporate matters." (*Id.*) He also represented the now inactive and administratively dissolved entity, Gracey Court, LLC, in a real estate purchase contract dispute and represented another Willoughby entity in a construction dispute. However, according to Ellis, "those matters had nothing whatsoever to do with obtaining demolition permits from the City (or any governmental entity), had nothing whatsoever to do with local Code provisions pertaining to the issuance of such permits, had nothing whatsoever to do with the real property that is the subject of [this] Case . . . , and, overall, had nothing whatsoever to do with the matters at issue or conceivably at issue in [this] Case." (*Id.*) Ellis also denies Jennifer Willoughby's and her lawyers'

assertion that he continued to have access to "up-to-date financial information for the Willoughbys and their related companies" as recently as January 2024, when he responded to a request for information regarding a Willoughby entity transaction from a financial institution. He states:

> [I]n January 2024, I answered a question (via electronic mail) that I received directly from ALTRA Federal Credit Union (a nonprofit financial cooperative that provides financial services) regarding certain loan modifications I had performed previously. Contrary to the incorrect assertion contained in the instant Motion to Disqualify, neither I, nor any member of the Firm, prepared or provided a title opinion for Mrs. Willoughby (or for any entity in which she or her husband hold an interest), during or as part of the aforementioned January 2024 electronic correspondence. Instead, I was merely answering a question facilitated and tendered by ALTRA Federal Credit Union, and I was not providing legal representation to Mrs. Willoughby, her husband, or any of her/his/their companies during that correspondence, and I did not receive or send any confidential information during that correspondence. ALTRA Federal Credit Union's question pertained to a matter that had already been concluded many months earlier.

(Ellis Aff. ¶ 4.) Ellis also confirms that neither he nor anyone else at the firm performed work for Gracey LP, assisted in its formation, or assisted in the formation of the two Tennessee investment services trusts that are identified as Gracey's members. (Doc. No. 23-3, Ellis Aff. ¶ 5.) He also states that neither he nor anyone else at the firm assisted the Willoughbys or Gracey LP to purchase the Property that is the subject of this case and that he did not become aware of Gracey's purchase of the Property until the delivery of the Complaint to the Firm "for potential representation of the City and the other Defendants in the Case." (*Id.* ¶ 6.)

Regarding Willoughby's statement about having discussed "permit problems" with him (Willoughby Aff. ¶ 8), Ellis states that he "does not recall" any discussion with Willoughby relating to obtaining a demolition permit and affirmatively states that he has never given the Willoughbys "advice concerning the obtaining of such a permit as [he is] not familiar with the pertinent process" (Ellis Aff. ¶ 6). He also states that he has reviewed the Complaint and understands the issues involved in this case and that he has not "personally received any

information, nor has the Firm received any confidential information, that would have any relevance whatsoever to the Case." (*Id.* ¶ 7.)

In their Response in Opposition to the Motion to Disqualify, the defendants argue that disqualification is not required, because (1) the Firm has never represented Gracey LP, so it does not qualify as a current or former client; (2) even if the Firm's prior representation of Jennifer Willoughby and other sister entities owned by the Willoughbys also makes Gracey LP a former client by association, the current dispute is not the same as or substantially related to any matter in which Batson formerly represented Jennifer Willoughby or any entity she controlled; and (3) no attorney at the Firm ever received confidential information in the course of representing Jennifer Willoughby or any entity she controlled that is relevant to the current lawsuit.

In its Reply, Gracey points out that Ellis does not actually "deny having conversations with Ms. Willoughby about the City's denial of the demolition permit and receiving her views and comments" and instead states only that he "does not recall" such a conversation; and asserts again that Ellis was "undertaking active representation on behalf of Gracey's affiliated company COCO GP" through January 2024, as a result of which, according to Gracey, it was a "current client" of the Firm as of January 2024. (Doc. No. 24-1, at 3.) It continues to argue that, based on the structure of the Willoughbys' business entities, Gracey GP qualifies as a former client of the Firm, as all of the business entities were interrelated and engaged in the "same business plan," which involved the "continued redevelopment of properties" located within Clarksville's CBD Zone and which Ellis "previously assisted in implementing." (*Id.* at 7, 5.) It contends that the subject matter of the current case is substantially related to the matters in which Ellis previously represented the various Willoughby entities, again because they all involved the development of properties in the CBD Zone. And it "emphatically disagrees with the statement that Mr. Ellis did not receive otherwise

confidential information regarding the property from Ms. Willoughby," based on Ellis's receipt in January 2024 of what the plaintiff characterizes as "updated privileged interrelated financial information from [Gracey's and Willoughby's] bank," which Gracey contends is relevant to the damages it seeks in this matter. (*Id.* at 8.) Gracey also takes issue with Batson's purportedly accusing the plaintiff of not adequately identifying the "specific confidential documents still in the files" of the Firm. (*Id.* at 9.)

## II.    LEGAL STANDARDS

The parties agree that the standard articulated by the Sixth Circuit in *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882 (6th Cir. 1990), governs motions to disqualify counsel because of a conflict of interest. Under this test,

> qualification of counsel is appropriate if "(1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was/is substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification."

*Bowers v. Ophthalmology Grp.*, 733 F.3d 647, 651 (6th Cir. 2013) (quoting *Dana Corp.*, 900 F.2d at 889). In *Bowers*, the Sixth Circuit noted that it had not explained how the "*Dana* analysis operates in conjunction with this court's rule that attorneys are 'subject to the rules of professional conduct or other equivalent rules of the state where the attorney's principal office is located.'" *Id.* (quoting 6th Cir. R. 46(b)). At the same time, it found that there was effectively no difference between the test articulated in *Dana* and Rule 1.9(a) of the Kentucky Rules of Professional Conduct, which is identical to Rule 1.9(a) of American Bar Association's Model Rules of Professional Conduct. *Id.* And those versions of Rule 1.9(a) are identical to the version adopted by Tennessee:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that

> person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

Tenn. S. Ct. R. 8, RPC 1.9(a); *see also Bowers*, 733 F.3d at 651. Following *Dana* and *Bowers*, district courts generally "look[] to the codified Rules of Professional Conduct for guidance in determining whether an attorney should be disqualified from representing a client based on a conflict of interest." *Seaman Corp. v. Zurich Am. Ins. Co.*, 643 F. Supp. 3d 790, 795 (N.D. Ohio 2022) (citations omitted). The party moving for disqualification bears the burden of proving that disqualification is necessary. *Seaman Corp. v. Zurich Am. Ins. Co.*, 643 F. Supp. 3d 790, 795 (N.D. Ohio 2022).

"While motions to disqualify may be legitimate and necessary under certain circumstances, they 'should be viewed with extreme caution for they can be misused as techniques of harassment.'" *SST Castings, Inc. v. Amana Appliances, Inc.*, 250 F. Supp. 2d 863, 865–66 (S.D. Ohio 2002) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982)). "Thus, courts are sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain counsel of [its] choice." *Seaman Corp.*, 643 F. Supp. 3d at 794 (internal quotation marks and citation omitted); *see also Packaged Ice Antitrust Litig. v. Arctic Glacier, Inc.*, Nos. 08-01952 & 10-11689, 2010 WL 5146384, at *2 (E.D. Mich. Dec. 13, 2010) ("'[A] party's right to have counsel of choice is a fundamental tenet of American jurisprudence, and therefore a court may not lightly deprive a party of its chosen counsel.'" (alteration in original) (quoting *Am. Special Risk Ins. Co. ex rel. S. Macomb Disposal Auth. v. City of Centerline*, 69 F. Supp. 2d 944, 953 (E.D. Mich. 1999))). However, while the court should be "on guard against abuse, it should not weigh the competing issues with hair-splitting nicety but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing the appearance of impropriety, . . . resolve all doubts in favor of

disqualification." *Seaman Corp.*, 643 F. Supp. 3d at 796 (internal quotation marks and citation omitted).

## III.    DISCUSSION

### A.    Is Gracey GP a Former Client of the Firm?

The defendants assert, and have presented proof in the form of several attorney affidavits, that Gracey GP is not now and has never been a client of the firm. They argue that the failure of the plaintiff to establish this threshold element of the *Dana* test requires the denial of its motion. They also assert that, under the "entity rule," when an attorney represents an organization, the client is the organization, not the entity's individual members or constituents. (Doc. No. 22, at 7 (citing *McKinney v. McMeans*, 147 F. Supp. 2d 898, 901 (W.D. Tenn. 2001)).)

The court accepts, as a factual matter, the Firm's assertions that Gracey GP itself has never actually been a client. There is no dispute, however, that Jennifer Willoughby and various entities of which she is the beneficial owner are former clients. Moreover, the fact that Gracey GP *per se* is not a former client is not dispositive. Willoughby's Affidavit makes it clear that all of the Willoughby entities are closely held and that she is an agent, or beneficial owner, of all of these entities, even if not in all cases formally a "member." (*See* Willoughby Aff. ¶¶ 2, 4.) She asserts that Batson has represented her and her various business entities in executing their business plan of purchasing and developing properties in the Clarksville CBD Zone for the past ten years. (*Id.* ¶¶ 4–5.)

It is generally true, as the defendants argue, that business entities are separate and distinct from their shareholders and managers and that an attorney representing a business entity represents the entity rather than its individual members. *Accord, e.g.*, *MJK Fam. LLC v. Corp. Eagle Mgmt. Servs., Inc.*, 676 F. Supp. 2d 584, 594 (E.D. Mich. 2009) ("The law is generally settled that an attorney for a corporation does not automatically represent the corporation's constituents in their

individual capacities, even on the same matters." (quoting *Innes v. Howell Corp.*, 76 F.3d 702, 712 (6th Cir. 1996)). The comments to the Tennessee Rules of Professional Conduct, in fact, provide that a "[a] lawyer who represents a corporation or other organization does not, by virtue of that representation, necessarily represent any constituent or affiliated organization, such as a parent or subsidiary." Tenn. S. Ct. R. 8, RPC 1.7, cmt. 33.

The same comment also states, however, that a lawyer for a business entity will not be prevented from representing an affiliate "in an unrelated matter, *unless* the circumstances are such that the affiliate should also be considered a client of the lawyer." *Id.* Many courts, in fact, have held that an affiliated entity of an entity that was previously represented by an attorney may "also be considered a 'client' for disqualification purposes." *Ramada Franchise Sys. v. Hotel of Gainesville Assocs.*, 988 F. Supp. 1460, 1463 (N.D. Ga. 1997) (collecting cases); *see also GSI Com. Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 210 (2d Cir. 2010) ("We agree that representation adverse to a client's affiliate can, in certain circumstances, conflict with the lawyer's duty of loyalty owed to a client, a situation that we shall refer to as 'a corporate affiliate conflict.'").

In considering this situation, courts typically focus "not on whether the relationship at issue is 'in all respects that of attorney and client, but whether there exist sufficient aspects of an attorney-client relationship for purposes of triggering inquiry into the potential conflict.'" *Ramada Franchise Sys.*, 988 F. Supp. at 1463 (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 749 (2d Cir. 1981)). As the Second Circuit has explained, to determine whether an affiliated entity may qualify as a client or former client, "[c]ourts have generally focused on: (i) the degree of operational commonality between affiliated entities, and (ii) the extent to which one depends financially on the other." *GSI Com. Sols.*, 618 F.3d at 210. "Operational commonality" refers to whether the entities "rely on a common infrastructure"—for instance, the extent to which their

technology systems are integrated and/or their management is shared. *Id.* at 211 (citations omitted). "As to financial interdependence, several courts have considered the extent to which an adverse outcome in the matter at issue would result in substantial and measurable loss to the client or its affiliate." *Id.* (citations omitted).

In the present case, the court finds that Jennifer Willoughby and her various business entities should be considered a single entity for purposes of the first prong of the *Dana* analysis and, therefore, that Gracey GP qualifies as a former client of the Firm. Willoughby states that she and her husband are the "beneficial owners" of Gracey GP and all of the other related sister entities, and her testimony indicates that these closely held business entities—all of which are simply an extension of herself and her husband—effectively operate one business: the business of buying and developing properties in the Clarksville CBD Zone. The defendants do not deny or counter any of these assertions but merely state that Batson never actually represented Gracey GP. That fact simply is not dispositive, given the circumstances presented here. The court finds that the plaintiff has shown that Gracey GP should be considered a former client of the Firm.

**B.        Is this Case Substantially Related to Prior Matters Handled by the Firm?**

The comments to Rule 1.9 "make clear that the 'former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter.'" *Bowers*, 733 F.3d at 651; *see also* Tenn. S. Ct. R. 8, RPC 1.9 cmt. 3(e). "Given this limitation, [the court] must determine whether matters are 'substantially related' while avoiding specific inquiries into the attorney's representation of a now-adverse client." *Bowers*, 733 F.3d at 652.

The comments to RCP 1.9 state:

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or other work the lawyer performed for the former client or if there is a substantial risk that confidential factual information that would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter. . . . Any conclusion or presumption concerning the type of confidential factual information that would normally have been obtained in the prior representation may be overcome or rebutted by the lawyer by proof concerning the information actually received in the prior representation.

Tenn. S. Ct. R. 8, RPC 1.9, cmt. 3; *see also Bowers*, 733 F.3d at 652 (quoting Ky. S. Ct. R. 3.130,

Ky. RPC 1.9 cmt. 3).

The Sixth Circuit has further advised as follows:

> In determining whether a substantial relationship exists, the court evaluates the similarities between the factual bases of the two representations. A commonality of legal claims or issues is not required. At a functional level, the inquiry is whether the attorneys were trying to acquire information vitally related to the subject matter of the pending litigation. To accomplish this inquiry, the court must be able to reconstruct the attorney's representation of the former client, to infer what confidential information could have been imparted in that representation, and to decide whether that information has any relevance to the attorney's representation of the current client. What confidential information could have been imparted involves considering what information and facts ought to have been or would typically be disclosed in such a relationship. Consequently, the representations are substantially related if they involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct.

*Bowers*, 733 F.3d at 652 (quoting *Koch v. Koch Indus.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992)).

In the present case, the plaintiff asserts that the matter in which Batson now represents the City and the City defendants is substantially related to the matters in which the Firm previously represented various Willoughby entities because they all involved the purchase or sale of real estate and the commercial development of properties in Clarksville's CBD Zone. Gracey claims that in the course of representing "Gracey" in those other matters, Ellis, as a Batson attorney, would have acquired "intimate knowledge of Gracey, its beneficial owners, specific business model, practices, investors, and other confidential information" related to real estate development in the CBD Zone.

(Doc. No. 16, at 5.) It claims that Batson's access to this information provides it with a "distinct and impermissible advantage in the present action" and that it is "inevitable that Batson will knowingly or unknowingly use Gracey's previously disclosed confidential information to the disadvantage of Gracey in the present action." (*Id.* at 5–6, 9.)

For their part, the Batson attorneys maintain that Willoughby never contacted the Firm about the subject matter involved in this case—Gracey's efforts to obtain a demolition permit— and instead retained John Crow, who was not affiliated with Batson at the time. They point out that Crow, not Batson, was involved in pre-litigation discussions with the City on behalf of Gracey; that Batson did not represent the Willoughbys in the formation of Gracey or in the purchase of the Property that is the subject of the current dispute; and did not even know about the demolition permit dispute until the City contacted it about potentially representing it and the other defendants in this case. (Doc. No. 22, at 12–13.) And Ellis specifically denies giving Willoughby or her husband advice regarding obtaining a demolition permit, as that is not an area of the law with which he is familiar. They point out that the Firm's prior representation of the Willoughbys and their business entities involved real estate transactions, a landlord-tenant dispute, a real estate purchase contract dispute, a construction dispute, and general corporate matters, none of which involved obtaining a demolition permit.

The court finds that, although the specific subject matter of the present litigation—the denial of a demolition permit—is not identical to the other matters in which Batson represented a Willoughby entity, "[a] commonality of legal claims or issues is not required." *Bowers*, 733 F.3d at 652. There is simply no dispute that Batson repeatedly, over the course of many years, represented the Willoughby entities in connection with the purchase, sale, and development of real estate in the Clarksville CBD Zone and that the present matter also concerns a Willoughby entity's

attempt to purchase, sell, and develop real estate in the CBD Zone. These matters are substantially related or, at the very least, appear to be substantially related, given the overall business practices of the Willoughby entities.

Moreover, as set forth above, the "substantially related" prong also asks, in large part, whether the law firm, during its representation of the former client, obtained confidential information that gives the law firm—or its new client—an advantage in the current matter. *See Bowers*, 733 F.3d at 652 (noting that deciding the "substantially related" prong requires the court "to infer what confidential information could have been imparted in [the former] representation, and to decide whether that information has any relevance to the attorney's representation of the current client" (citation omitted)). Attempting to follow the Sixth Circuit's directive in *Bowers*, this court has little difficulty imagining that Batson's knowledge of the Willoughby entities' finances, their business strategy for buying and developing properties in the CBD Zone, and their general approach to litigation and settlement of matters involving their real estate holdings would provide Batson with insider knowledge of the type that could provide its current clients with an advantage in this litigation.

This factor, too, is met.

## C.  Did the Firm Acquire Confidential Information?

The third *Dana* factor asks simply whether the lawyer or law firm a party seeks to disqualify obtained confidential information from the former client, not whether that confidential information is relevant to the current dispute.[3] In this case, because Gracey GP must be considered a former client of Batson, the answer to this question is indisputably "yes."

---

[3] Rather, as indicated above, the "substantially related" prong asks whether the law firm is in possession of confidential information that gives it a leg up in the current dispute.

## IV. CONCLUSION

The court emphasizes that it finds no basis for concluding that Batson or any Batson attorney has engaged in inappropriate conduct or has intentionally used confidential client information to the disadvantage of Gracey or Jennifer Willoughby. However, the court declines to "weigh the competing issues with hair-splitting nicety," and, in view of "preventing even the appearance of impropriety," the court must "resolve all doubts in favor of disqualification." *Seaman Corp.*, 643 F. Supp. 3d at 796. Exercising its supervisory power over the members of the bar, the court will grant the Motion to Disqualify (Doc. No. 16).

An appropriate Order is filed herewith.

_____

ALETA A. TRAUGER
United States District Judge