# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **GRACEY GENERAL PARTNERSHIP,** | ) | |
| **A Tennessee General Partnership,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:23-cv-01189** |
| **v.** | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **CITY OF CLARKSVILLE,** | ) | |
| **TENNESSEE; JOE PITTS, Mayor of the** | ) | |
| **City of Clarksville, Tennessee; DAVID** | ) | |
| **SMITH, Interim Head of the Department** | ) | |
| **of Building and Codes of the City of** | ) | |
| **Clarksville, Tennessee; and DEIDRE** | ) | |
| **WARD, Director of the Department of** | ) | |
| **Building and Codes of the City of** | ) | |
| **Clarksville, Tennessee,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

This case concerns a land developer's demolition permit application. For the reasons set forth herein, the court will grant the defendants' Motion to Dismiss (Doc. No. 11).

## I.    FACTS

This dispute is about the plaintiff's attempt to obtain a permit to demolish a house (the "House") located on approximately one acre of land at 517 Madison Street, Clarksville, Tennessee (collectively, the "Property").[1] (Doc. No. 1 ¶¶ 10–11.)

---

[1] The plaintiff also complains about the defendants' denial of a Disconnect Order that would have allowed CDE Light Band to disconnect electrical services at the Property. (*See* Doc. No. 1 ¶ 5.) The failure to approve disconnection of electrical services seems entirely dependent on the denial of the demolition permit and does not merit separate consideration. (*See* Doc. No. 39 at 12 n.3 ("The City purportedly denied the issuance of the CDE Lightband 'Utility Disconnect Order' on the basis that the demolition permit had not been issued.").)

1

The plaintiff, Gracey General Partnership ("Gracey"), has sued the City of Clarksville (the "City") and three Clarksville officials, in both their individual and official capacities: Joe Pitts, Mayor of Clarksville; David Smith, Interim Head of the City of Clarksville Department of Buildings and Codes; and Deidre Ward, Director of the City of Clarksville Department of Buildings and Codes (collectively, the "individual defendants"). (Doc. No. 1 ¶¶ 3–6.) The parties disagree about the requirements, under municipal law,[2] to demolish a building within the zoning "overlay district" in which the Property sits. The plaintiff alleges that, in denying its demolition permit application, the defendants violated municipal law and the United States Constitution.

For over a decade, non-party George Terrell owned the Property, which he used as a single-family residence. (Doc. No. 1 ¶¶ 10–11.) By an August 29, 2023 deed, Gracey acquired the Property from Terrell.[3] (Doc. No. 1 ¶ 10.) Gracey is a Tennessee general partnership, the members of which are two Tennessee Investment Services Trusts—JDW II and JPW II. (Doc. No. 1 ¶ 2; Doc. No. 6.) Gracey's managing partner is Jennifer Willoughby.[4] (Doc. No. 1 ¶ 21.) Willoughby and her husband are the "beneficial owners of various affiliated business entities," including Gracey. (Doc. No. 16-1 ¶ 2.) They are also the beneficial owners of JPW LLC, which was Gracey's agent in the purchase of the Property and for which Willoughby is a real estate agent. (*Id.*; *see also* Doc. No. 39 at 9.) Gracey's sole business is the "acquisition of distressed real estate" within

---

[2] The defendants have filed the relevant portions of Clarksville Zoning Ordinance (Doc. No. 12-11) and Clarksville Property Maintenance Code (Doc. Nos. 12-12 through 12-15).

[3] The defendants say that the plaintiff's purchase of the Property was contractually contingent on securing a demolition permit for the House. (*See* Doc. No. 13-1 (citing Doc. 12-10 at 35:13–17, 39:22–23); Doc. No. 47 at 9.) The plaintiff does not contest this. If the defendants are correct, it is unclear why the sale went through.

[4] The Complaint and the plaintiff's Business Entity Disclosure Statement state that Gracey has only two members, neither of which are Jennifer Willoughby. (Doc. No. 1 ¶ 2; Doc. No. 6.) So, while the Complaint identifies Willoughby as Gracey's "managing partner" (Doc. No. 1 ¶ 21), it appears that she acts as Gracey's agent. (*Accord* Doc. No. 32 at 2 n.1.)

2

Clarksville's central business zone for development—either by demolishing and building multi-family housing or by converting existing buildings for mixed residential and commercial use. (Doc. No. 16-1 ¶¶ 3–4.)

Part of downtown Clarksville, including the Property, is zoned within the Central Business District. (Doc. No. 1 ¶ 12.) In addition to zoning districts, Clarksville has several "overlay districts," which are subsets of zoning districts that impose additional requirements on property within them—building standards rather than property use.[5] One overlay district is the Downtown Urban Design Overlay District (the "Downtown District"), the purpose of which is "to enhance the quality, image, and economic vitality of Downtown Clarksville" and therefore "imposes urban design guidelines." Clarksville Zoning Ordinance § 9.5.1(1). The Downtown Urban Design Standards and Guidelines (the "Guidelines") "are intended to preserve and enhance the special character of the Downtown Overlay District by encouraging rehabilitation and new construction that is sensitive to the existing urban form and historic character." *Id.* § 9.5.3(1)(A)(2). At great length and detail, the Guidelines suggest or mandate design features for property within the Downtown District.[6] The Property at issue in this case is within the Downtown District. (Doc. No. 1 ¶ 14.)

---

[5] *See, e.g.*, Clarksville Zoning Ordinance § 9.5.1(2) ("This overlay zoning district is placed 'over' the base zoning in an area in order to modify the base zoning's regulatory standards. The overlay district alters such standards as building placement, size and height, parking and access, and landscaping and buffering, but does not determine the use of the property (both land and structures) is governed by the underlying base zoning.").

[6] For instance, the Guidelines provide that awnings on commercial and mixed-use buildings within the Downtown District need not be retractable, but they should "appear to be." *Id.* § 9.5.3(1)(D)(4)(b).

3

Relevant to this case are provisions of the City Property Maintenance Code and Clarksville Zoning Ordinance regarding the Downtown District. The provision of the Property Maintenance Code on which the plaintiff relies states:

> *Permits.* Any owner, authorized agent, or contractor who desires to construct, enlarge, alter, repair, move, demolish, or change a residential building or structure or to cause any such work to be done, shall first make application to the housing official and obtain the required permit therefor. Ordinary minor repairs may be made with the approval of the housing official without a permit, provided that such repairs shall not violate any of the provisions of this code.

Clarksville Code Tit. 4 Ch. 6 § 4-601(j).

The two applicable Zoning Ordinance sections are as follows:

> Government officials, property owners, developers, design consultants and other stakeholders will use this section to prepare improvement plans that are consistent with the Downtown Design Standards and Guidelines. The standards and guidelines apply to private nonresidential and multiple-family residential (excluding single-family and duplex structures) new construction, exterior remodeling or repainting; window and awning changes or improvements; signing changes and improvements; sidewalk changes and improvements; exterior lighting changes and improvements; and landscaping and parking lot construction, changes and improvements.

§ 9.5.1(3) ("Scope of Review").

> To ensure consistency with the Downtown Urban Design Standards and Guidelines, the Common Design Review Board and the Clarksville-Montgomery Regional Planning Commission staff will review all private projects in the Downtown Urban Design Overlay District that require demolition and building permits and that make modifications to the exterior appearance of buildings, signing, landscaping and parking. Existing nonconforming structures, unforeseen physical conditions and subsequent architectural programmatic constraints may warrant exceptions to the guidelines.

§ 9.5.4(1) ("Project Approval Process" - Overview).

On June 30, 2023—when Terrell still owned the property—Jennifer Willoughby, as Terrell's "authorized agent," submitted to the Regional Planning Commission and Design Review Coordinator an "Application for Appropriateness" to demolish the House. (*See* Doc. No. 13-1 at

4

2; Doc. No. 12-2.)[7] The Common Design Review Board held a public meeting on July 24, 2023, during which it took up Terrell's application. (Doc. No. 13-1 at 3; Doc. No. 12-5 at 1–3.) After public comment, as well as comments from Willoughby, her husband, and members of the Board, the Board voted unanimously to reject the application for demolition. (Doc. No. 13-1 at 3–4.) A week later, Willoughby appealed the Common Design Review Board's denial by email to Brent Clemmons, the Design Review Coordinator/Planner of the Regional Planning Commission. (Doc. No. 13-1 at 4 (citing Doc. No. 12-6).) Two weeks after that, Willoughby withdrew the appeal. (Doc. No. 13-1 at 4 (citing Doc. No. 12-8; Doc. No. 12-9 at 12).)[8]

The Complaint begins the story on August 29, 2023—the day the plaintiff acquired the Property. On August 30, 2023, Willoughby—this time on behalf of the plaintiff, the Property's new owner—submitted an online demolition permit application to the Clarksville Department of Buildings and Codes. (Doc. No. 1 ¶ 20.) In response, by email, defendant Ward informed Willoughby that the City could not issue a demolition permit because Zoning Code § 9.5.4(1) requires the Regional Planning Commission and Common Design Review Board to review any such permit. (Doc. No. 1 ¶¶ 22–23; Doc. No. 1-6 at 1–2.) Ward wrote: "I am not denying your application. I am just advising of what would be required upon submission of your Demolition Permit." (Doc. No. 1-6 at 1.) In addition, Ward wrote that the plaintiff would have to "make a new application to the RPC, as current owner of the property, and present your case and future plans to the Common Design Review Board and the RPC." (*Id.*)

---

[7] The plaintiff states that, at the time of Terrell's application, "Jennifer Willoughby, a real estate agent of JPW LLC, the buyer's [Gracey's] agent, was not an applicant or owner of the property." (Doc. No. 39 at 9.)

[8] The Complaint omits this history. The court considers the facts presented in documents appended to the Motion to Dismiss, as discussed in this court's Order (Doc. No. 21) granting the plaintiff's Motion to Clarify (Doc. No. 18).

5

Over the next several weeks, Willoughby exchanged emails with various city officials. (*See* Doc. 1 ¶¶ 24–31.) In a September 26, 2023 letter, defendant Smith informed Willoughby that "<u>at this time</u>" the City would not issue a demolition permit. (Doc. No. 1-12 (emphasis in original); Doc. No. 1 ¶ 32.) Citing City of Clarksville Zoning Regulation § 9.5.4, Smith wrote that any project in the Downtown District that requires demolition needs to be reviewed by the Regional Planning Commission and the Common Design Review Board. (Doc. No. 1-12.) Defendant Smith "encourage[d]" Willoughby to go before the Common Design Review Board to present her case so that the City could "make a final decision on the demo permit." (*Id.*)

The parties' main dispute is about the requirements to acquire a demolition permit for the House. The plaintiff argues that § 9.5.1(3) exempts single-family structures from the Downtown District's requirements, and its demolition permit application is therefore exempt from § 9.5.4(1)'s requirement for review by either the Common Design Review Board or the Regional Planning Commission. (Doc. No. 1 ¶¶ 16, 24.) Further, the plaintiff argues that the *only* requirement to receive a demolition permit for a structure exempt from the Downtown District's scope, per Clarksville Code Tit. 4 Ch. 6 § 4-601(j), is to apply for one. (Doc. No. 1 ¶ 19; Doc. No. 39 at 31–32.) The defendants argue that § 9.5.1(3) exempts structures *only* from the Guidelines—contained wholly within subsection 3—and therefore subsection 4's requirement for review by the Common Design Review Board applies to the plaintiff's demolition permit application. (Doc. No. 13-1 at 15–16.)

Moreover, the parties put forward different narratives. The plaintiff describes a "conspir[acy]" between historical-preservation activists and municipal officials to delay and deny its demolition permit application, which should have been ministerially granted, in violation of municipal ordinances and the United States Constitution. (Doc. No. 1 ¶ 1.) The defendants describe

6

a plaintiff which, dissatisfied with a decision by a municipal board when the Property had a different owner, tried to bypass the demolition-permit application process on a second attempt and then cry foul when that did not yield the plaintiff's desired result. (Doc. No. 13-1 at 4–5.)

In the background of this case is the House's history and character and a citizen-led effort to stop the House's demolition. (It is uncontested that the House is not in any historic zoning district or on any historic register. (Doc. No. 1 ¶ 13.)) At the public meeting of the Common Design Review Board, for example, Design Review Coordinator Brent Clemmons noted that before the members were emails from roughly a dozen concerned citizens—including a "Council Person" and the chairman of the Tennessee State Historic Zoning Commission—all opposed to the House's demolition. (Doc. No. 12-10 at 5:21–6:9.) In addition, construing the facts in the light most favorable to the plaintiff, the House's history and appearance prompted at least some Common Design Review Board members to deny Terrell's "Application for Appropriateness" to demolish the House, when Willoughby submitted it on his behalf, before the plaintiff acquired the Property. (*See, e.g.*, Doc. No. 12-10 at 3:3–5:16; *id.* at 51:8–52:21 ("I [Board member John Gannon] think [the House] should be on the historic zone. And I will not vote for that to be demolished.").)

The plaintiff alleges that the City believes that the House is a "structure contributing to the historic downtown." (Doc. No. 1 ¶ 17.) And, construing the facts in the light most favorable to the plaintiff, the court finds this allegation to be supported by the public meeting minutes the defendants filed. Jeffrey Tyndall, Director of the Regional Planning Commission (Doc. No. 12-1), for example, noted during a Common Design Review Board meeting that the House is a "contributing building" because it "contribut[es] to the overall downtown historic feel." (Doc. No. 12-10 at 48:25–50:2.)

7

## II. PROCEDURAL HISTORY

On November 13, 2023, Gracey filed its Complaint (Doc. No. 1) along with exhibits (Doc. Nos. 1-1 through 1-13), asserting claims under 42 U.S.C. § 1983. Specifically, Gracey contends that the City and the individual defendants—in their official and personal capacities—improperly denied the plaintiff's application for a demolition permit (Doc. No. 1 ¶¶ 19–38), which constitutes 1) a violation of Clarkson Zoning Code and entitles the plaintiff to declaratory relief (Count I) (*id.* ¶¶ 39–41); 2) an unconstitutional deprivation of property and liberty interests pursuant to an unconstitutionally vague ordinance (Count II) (*id.* ¶¶ 42–46); 3) denial of substantive due process under the Fourteenth Amendment (Count III) (*id.* ¶¶ 47–49); 4) and denial of equal protection of the laws under the Fourteenth Amendment (Count IV) (*id.* ¶¶ 47–49). Gracey seeks a declaration that Clarksville Zoning Ordinance § 9.5.1(3) exempts the demolition and electrical disconnection permits it seeks from Common Design Review Board review, an injunction compelling the Defendants to issue the permits, compensatory and punitive damages, and costs and fees. (*Id.* at 16–17.)

In response to the Complaint, the defendants filed a Motion to Dismiss (Doc. No. 11), supporting documents (Doc. Nos. 12, 12-1 through 12-15), and an accompanying Memorandum (Doc. No. 13-1). The defendants move for dismissal of the Complaint under Rule 12(b)(1), (2), (4), (5), (6), and (7). (Doc. No. 11 at 1.) Gracey has filed a Response (Doc No. 39) along with exhibits (Doc. Nos. 39-1 through 39-6),[9] and the defendants have filed a Reply (Doc. No. 47).

---

[9] The court will address below why it will not consider the exhibits filed with the Response. Inexplicably, one of the exhibits is Plaintiff's Rule 26(a)(1) Initial Disclosures, which states— falsely so far as this court knows—that "[f]act investigation and discovery of the Defendants is ongoing in this matter." (Doc. No. 39-3 at 1.)

8

Meanwhile, the court has already decided two other issues. First, the court granted the plaintiff's Motion to Disqualify Batson Nolan (Doc. No. 16), the law firm that originally represented the defendants. (Doc. No. 33.) Second, the court granted the plaintiff's Motion to Clarify (Doc. No. 18) and held that the documents the defendants appended to their Motion to Dismiss did not thereby convert it to a Rule 56 motion for summary judgment. (Doc. No. 21.)

## III. LEGAL STANDARDS[10]

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs dismissal for lack of subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin–Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The defendants here bring a factual attack. When the court is presented with a factual attack on its jurisdiction, "no presumption of truth applies to the plaintiff's factual allegations, and the court is free to weigh the evidence and resolve factual disputes so as to satisfy itself as to the existence of its power to hear the case." *Dunn v. Spivey,* No. 2:09-0007, 2009 WL 1322600, at *3 (M.D. Tenn. May 11, 2009) (internal citation and quotation marks omitted). "In its review, the district court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve jurisdictional facts." *Gentek*, 491 F.3d at 330.

### B. Rule 12(b)(2)

A defendant may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Personal jurisdiction is '[a]n essential element of the jurisdiction of a district . . . court' and without personal jurisdiction the court is 'powerless to proceed to an adjudication.'"

---

[10] The court does not reach the defendants' motions under Rules 12(b)(4), (5), or (7), and therefore does not describe their standards of review.

*Mgmt. Registry, Inc. v. Cloud Consulting Partners*, No. 3:19-CV-00340-JHM, 2019 WL 4478860, at *3 (W.D. Ky. Sept. 18, 2019) (quoting *Emps. Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937)). The party asserting personal jurisdiction bears the burden of demonstrating that such jurisdiction exists. *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). "[I]n the face of a properly supported motion for dismissal, the plaintiff may not stand on his pleading but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449–50 (6th Cir. 2012) (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

C.      Rule 12(b)(6)

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim for relief that is plausible on its face. *Twombly*, 550 U.S. at 555–57. The court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). This standard does not require *detailed* factual allegations, but it does require "more than labels[,] conclusions, [or] a formulaic recitation" of the elements of a cause of action. *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020) (quoting *Twombly*, 550 U.S. at 555). "Specific facts are not necessary," as the statement need only provide the defendant fair notice of the nature of the claim and upon what grounds it rests. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (quoting *Twombly,* 550 U.S. at 555). And, while Rule 8 does not require details, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "[T]he complaint must 'contain either direct or inferential allegations respecting all the material elements [of a claim] to sustain a recovery under some viable legal theory.'" *Hollowell v. Cincinnati Ventilating Co.*, 711 F. Supp. 2d 751, 758 (E.D. Ky. 2010) (quoting *Hunter v. Sec'y of U.S. Army,* 565 F.3d 986, 992 (6th Cir. 2009)).

## IV.    DISCUSSION

### A.    Documents Appended to the Response

The plaintiff has appended to its Response a website screenshot showing a denied permit application (Doc. No. 39-1); an affidavit by Jennifer Willoughby to which are appended emails between Willoughby and city officials, marked as Exhibits A through H (Doc. No. 39-2); and Plaintiff's Rule 26(a)(1) Initial Disclosures. (Doc. No. 39-3.) The plaintiff also includes exhibits in support of its response to the defendant's Rule 12(b)(4) and 12(b)(5) arguments. (Doc. Nos. 39-4 through 39-6.)

Federal Rule 12(d) requires that a Rule 12(b)(6) motion be converted into a motion for summary judgment whenever matters outside the pleadings are presented to and accepted by the court. The court has "complete discretion" to consider extrinsic evidence presented with a Rule 12(b) motion—and thereby convert the motion to dismiss into a motion for summary judgment— or reject it or not consider it. 5C Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 1366 (3d ed. updated June 2024). But the court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)). This court previously determined that the defendants included exhibits with its 12(b)(6) motion that were "central to claims made in the Complaint and . . . the same sorts of documents that the plaintiff . . . attached to the Complaint." (Doc. No. 21 at 2.)

*1. Screenshot*

The plaintiff includes a screenshot of a website (Doc. No. 39-1), which it says shows the permit denial at issue. (Doc. No. 39 at 4, 24, 26–27.) Although in a slightly different format, it is similar to the screenshot the plaintiff submitted with the Complaint. (*Compare* Doc. No. 39-1 (showing "Denied" status of Demolition Permit Number DEMO-2023-000034 and little other information), *with* Doc. No. 1-5 (showing "Denied" status of Demolition Permit Number DEMO-2023-000034 and listing the "[a]pplied date" as August 30, 2023).) Because the application-status screenshot adds no new information, the court has no need to consider it.

*2. Affidavit and supporting exhibits; Initial Disclosures*

The plaintiff includes the affidavit and supporting documents "to provide the full picture of the prior event which the Defendants now interject." (Doc. No. 39 at 4–5.) Put another way, the plaintiff is attempting to amend the Complaint's factual allegations by including new information, supported by affidavit and non-public records, in its Response. Similarly, the plaintiff cites its Rule 26(a) Initial Disclosures in support of its equal protection argument that it has identified better-treated similarly situated entities. (Doc. No. 39 at 22 ("Although Gracey is not required to name similarly situated persons to survive a motion to dismiss, Gracey had provided the Defendants a list of seven similarly situated entities in its initial disclosures." (citing Doc. No. 39-3 ¶¶ 28–34)).)

The plaintiff has used the affidavit and other documents to improperly amplify the facts alleged in the Complaint. *Accord Orea Energy Grp., LLC v. E. Tenn. Consultants, Inc.*, No. 3:09-CV-041, 2009 WL 3246853, at *3 (E.D. Tenn. Oct. 6, 2009) ("[T[hese allegations are nowhere to be found in the Complaint. They are present only in plaintiff's briefing, and '[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss . . . .'" (quoting *Roulhac v. Sw. Reg'l Transit Auth.*, No. 1:07-cv-408, 2008 WL 920354, at *4 (S.D. Ohio Mar.31, 2008))). A party may not "submit . . . an affidavit[] to defeat a motion to dismiss." *Knowles v. Chase Home Fin., LLC*, No. 1:11-cv-01051-JDB-EGB, 2012 WL 13018539, at *9 (W.D. Tenn. Aug. 2, 2012) (citing *Riggs Drug Co. v. Amerisourcebergen Drug Corp.*, No. 3:09-CV-538, 2010 WL 3630123, at *1–2 (E.D. Tenn. Sept. 13, 2010)). The court will not consider the affidavit or its exhibits or the Initial Disclosures.

### 3. Exhibits relating to service

For the reasons explained below, the court will not discuss the defendants' Rule 12(b)(4) or (5) arguments and therefore will not consider supplementary material related to them.

B.     Rule 12(b)(1) Motion

13

The defendants make two arguments in support of their Motion to Dismiss for lack of subject matter jurisdiction. Because neither argument succeeds, the court will deny the defendants' 12(b)(1) motion.

*1. No Case or Controversy*

First, the defendants argue that this court lacks subject matter jurisdiction over any claim for declaratory relief because, without a final denial on the plaintiff's demolition permit application, there is no Article III case or controversy. (Doc. No. 13-1 at 23.) In support of this argument, the defendants note that, in multiple emails, two of the individual defendants stated that they were not denying the plaintiff's application, but rather informing the plaintiff, via Willoughby, that all such applications must first be presented to the Common Design Review Board. (*Id.* at 22–23.) In response, the plaintiff argues that the permit application was denied—notwithstanding contrary municipal statements—and, furthermore, that the thrust of its case is that no further review is required. (Doc. No. 39 at 24–27.)

Whether Clarksville "denied" the application or merely failed to grant it, it is uncontested that the plaintiff applied for a demolition permit, the City has not granted it, and it has said that the plaintiff must submit its application to the Common Design Review Board before the City could grant it. Further, as the plaintiff argues, its whole case rests on the argument that no further review of its permit application is necessary. The defendants' argument that this court lacks subject matter jurisdiction to determine whether the defendants violated the plaintiff's constitutional rights, in part, by requiring further review—because the plaintiff must first seek further review—is unavailing.

*2. Procedural default*

The parties dispute whether the plaintiff's federal claims are procedurally defaulted because the plaintiff failed to present the issue to state courts and, by the time of filing, was time-barred from doing so. (*See* Doc. No. 13-1 at 6–11; Doc. No. 39 at 5–10; Doc. No. 47 at 8–10.) Generally, a plaintiff need not exhaust state remedies—judicial or administrative—to bring an action under Section 1983 for constitutional deprivations. *See Patsy v. Bd. of Regents of State of Fla.*, 457 U.S. 496, 507 (1982) ("[E]xhaustion of state administrative remedies is not a prerequisite to an action under § 1983 . . . .").[11] Thus, that the plaintiff has not sought relief in the state courts is irrelevant to the plaintiff's 12(b)(1) motion. The defendant's arguments to the contrary, citing cases in which state prisoners were barred from federal *habeas* relief under 28 U.S.C. § 2254(b)'s exhaustion requirement, are inapposite.

C.    Rule 12(b)(2) Motion

The defendants move for dismissal for lack of personal jurisdiction under Rule 12(b)(2) (Doc. No. 11 at 1) but make no argument in support of dismissal. Thus, this court finds no grounds to dismiss under Rule 12(b)(2). *Accord, e.g.*, *United States v. ARG Corp.*, No. 3:10-CV-311, 2011 WL 338818, at *1 n.1 (N.D. Ind. Jan. 31, 2011) (declining to address a Rule 12(b)(2) motion where no argument in support was presented); *Funnekotter v. Agric. Dev. Bank of Zim.*, No. 13-CIV-1917 (CM), 2013 WL 6091616, at *2 n.1 (S.D.N.Y. Nov. 15, 2013) (same).

---

[11] Under some circumstances, however, a plaintiff must prove the inadequacy of state remedies to prevail on a procedural due process claim. *See, e.g.*, *Mun. Servs. of Am. Corp v. Sak*, No. 1:22- cv-2037, 2023 WL 6958639, at *4 (N.D. Ohio Oct. 20, 2023) ("[T]he Sixth Circuit has held that when a plaintiff challenges a deprivation [of property] arising from a random, unauthorized act of a state government official, a plaintiff is required to plead and prove the inadequacy of state remedies in order to state a procedural due process claim." (citing *Michell v. Fankhauser*, 375 F.3d 477, 483–84 (6th Cir. 2004)).

15

D.    Rule 12(b)(6) Motion

The defendants move to dismiss, for failure to state a claim, the plaintiff's four Counts, all brought under 42 U.S.C. § 1983.[12] To state a § 1983 claim, a plaintiff must allege (1) a deprivation of rights secured by the Constitution or federal law and (2) that the defendant deprived him of this right under color of law. *See Jones v. Duncan*, 840 F.2d 359, 361–62 (6th Cir. 1988) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). Section 1983 does not permit conventional vicarious liability claims against municipalities for the unconstitutional actions of their employees. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). But "the statute does permit a municipality to be held liable if the plaintiff establishes that the municipality's 'policy' . . . is what led to a violation of the plaintiff's constitutional rights." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1165 (6th Cir. 2021) (citing *Monell*, 436 U.S. at 694–95).

*Count II[13] – Deprivation of property and liberty interests pursuant to an unconstitutionally vague act*

The thrust of the plaintiff's case is that the defendants improperly denied its demolition permit application and required it to undergo additional scrutiny under a housing ordinance—Clarksville Zoning Ordinance § 9.5.4(1)—from which it is exempted by § 9.5.1(3). (Doc. No. 1 ¶¶ 1, 23–25.) Instead, the plaintiff argues, the City should have, but did not, grant the plaintiff's application under Property Maintenance Code § 4-601(j). (*See* Doc. No. 39 at 19 (noting "the City's refusal to issue a demolition permit under Section 4-601(j) of the Code").)

_____

[12] Count III does not specify that the plaintiff brings its void-for-vagueness challenge under 42 U.S.C. § 1983, but, reading the Complaint as a whole, the court construes it that way. *Accord Adams-Suggs v. Coppotelli*, No. 15-CV-0669-SMY-PMF, 2016 WL 1698406, at *2 (S.D. Ill. Apr. 28, 2016) ("Viewing the allegations of the Complaint as a whole, the Court finds that Plaintiff has sufficiently invoked 42 U.S.C. § 1983.").

[13] The court addresses Count I last.

16

Section 4-601(j), the plaintiff argues, requires that the City ministerially grant demolition permit applications. (Doc. No. 1 ¶ 19.) Or, if there are further criteria the City considers when evaluating demolition permit applications, they are unstated, and therefore Section 4-601(j) is unconstitutionally vague. (Doc. No. 39 at 17–18.) Put another way, the plaintiff alleges that Property Maintenance Code § 4-601(j) is "unconstitutionally vague and void for vagueness" "to the extent" it "allows a 'housing official' to consider any . . . standard of review for the issuance of a Demolition Permit" "other than only for the applicant to first make an application." (Doc. No. 1 ¶¶ 43.) The plaintiff seeks a declaration that "§ 4-601(j) provide[s] no objective basis for a 'housing official' to deny" its demolition permit application, (*id.* ¶ 46), which it describes as relief from "the Defendants' application of an unconstitutionally vague ordinance." (Doc. No. 39 at 3.)

Courts typically consider only *as-applied* void-for-vagueness challenges to civil laws. *See Stevens v. City of Columbus*, No. 21-3755, 2022 WL 2966396, at *5 (6th Cir. July 27, 2022) (citing *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 557 (6th Cir. 1999)). Here, however, the facts as alleged, viewed in the light most favorable to the plaintiff, indicate that the City denied the plaintiff's application because of its interpretation of the Zoning Ordinance, not the Property Maintenance Code. As the plaintiff puts it: "the heart of the matter . . . brings to light the pivotal question of whether Gracey was legally mandated by the Defendant[s] to undergo any scrutiny and secure discretionary approval from the Common Design Review Board. This central issue stands at the core of the ongoing controversy." (Doc. No. 39 at 27.) The provision allegedly requiring the plaintiff to undergo review by the Common Design Review Board is Zoning Ordinance § 9.5.4(1), not Property Maintenance Code § 4-601(j). The court finds that, if the plaintiff's permit was denied, it was denied, as the plaintiff alleges, under the Zoning Ordinance, not the Property Maintenance Code.

17

Because "a court is required to examine the vagueness challenge 'in the light of the facts of the case at hand' and [a plaintiff] 'bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation," the court will dismiss Count II for failure to state a claim. *Hartman v. Acton*, 499 F. Supp. 3d 523, 533–34 (S.D. Ohio 2020) (quoting *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001)).

*Count III – The issuance of injunctive relief to remedy the plaintiff's denial of its right to "substantive due process"*

The plaintiff alleges that it has a property interest in the demolition and electrical disconnect permits it sought and that the defendants' actions have deprived it of that property interest in violation of the substantive due process clause of the Fourteenth Amendment, which entitles it to damages and injunctive relief. (Doc. No. 1 ¶ 47.)

The Fourteenth Amendment to the United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The touchstone of due process is protection of the individual against arbitrary action of government, [including] the exercise of power without any reasonable justification in the service of a legitimate governmental objective." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998) (internal quotation marks omitted). The Due Process Clause provides "heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). The Fourteenth Amendment protects both procedural and substantive due process, but the plaintiff alleges violations only of the latter. Substantive due process protects certain rights, regardless of the procedures used. *Accord Siefert v. Hamilton Cnty.*, 951 F.3d 753, 765 (6th Cir. 2020).

18

Historically, the Sixth Circuit has allowed substantive due process claims that allege *either* a deprivation of a particular constitutional guarantee *or* actions that "shock the conscience." *See, e.g.*, *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) ("Substantive due process claims may be loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'" (quoting *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997))). Recently, however, the Sixth Circuit has held that plaintiffs "must show as a predicate the deprivation of a liberty or property interest, as well as conscience-shocking conduct." *Siefert*, 951 F.3d at 766 (quoting *Guertin v. State*, 912 F.3d 907, 922 (6th Cir. 2019)) (internal quotation marks omitted).

Thus, to state a substantive due process claim, the plaintiff must allege two things. First, it must allege a deprivation of a constitutionally protected liberty or property interest based on the discretionary conduct of government officials. *American Express Travel Related Servs. v. Kentucky*, 641 F.3d 685, 688–89 (6th Cir. 2011). Second, it "must show how the government's discretionary conduct that deprived that interest was constitutionally repugnant." *Guertin*, 912 F.3d at 922 (citing *Am. Express*, 641 F.3d at 688). This second requirement is difficult to meet:

> The threshold for the invocation of substantive due process is incredibly high, as it is intended as a final safeguard against government actions that scream abuse and shock the conscience. To that effect, the protections of substantive due process are limited to government action that is 'arbitrarily and oppressively exercised,' where 'only the most egregious official conduct can be said to be arbitrary in the constitutional sense.'

*Flege v. Williamstown Indep. Schs.*, No. 06-47-DLB, 2007 WL 679022, at *15 (E.D. Ky. Mar. 1, 2007) (quoting *Lewis*, 523 U.S. at 846).

Even if the plaintiff has a fundamental property interest in the two permits it applied for, and assuming that the defendants interfered with that property interest, the court, accepting the factual allegations as true and drawing all reasonable inferences in favor of the plaintiff, does not

19

find that the defendants' conduct was conscience-shocking. At its strongest, the Complaint alleges that the defendants have willfully misapplied municipal law for the improper purpose of prohibiting the plaintiff from demolishing a building that the defendants, and some others, prefer to retain. This conduct is not enough to state a substantive due process claim.

"Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation." *Lippman v. Town of Grafton by & Through Berger*, 594 F. Supp. 3d 134, 149–50 (D. Mass. 2022) (quoting *PFZ Props., Inc. v. Rodríguez*, 928 F.2d 28, 31 (1st Cir. 1991); *see also Regan Carroll Tr. v. City & Cnty. of San Francisco*, No. C-07-2577 SBA, 2008 WL 4544349, at *1 (N.D. Cal. Sept. 30, 2008) ("The federal courts have repeatedly recognized that a local agency's compliance with its own land use regulations does not present an interest protected under § 1983.") Nor are state law violations conscience-shocking merely because the official acted with improper motive, as the plaintiff here alleges.[14]

---

[14] *Accord, e.g.*, *Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) ("Our decision [affirming dismissal under Rule 12(b)(6)] would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith and had no claim that St. Louis County zoning applied to the property. A bad-faith violation of state law remains only a violation of state law."); *Lindquist v. Buckingham Twp.*, 106 F. App'x 768, 774 (3d Cir. 2004) ("[A] violation of state law, even a bad faith violation of state law, will not support a substantive due process claim in a land-use dispute."); *Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir. 1999) ("Arbitrary conduct that might violate zoning regulations as a matter of state law is not sufficient to demonstrate conduct so outrageously arbitrary as to constitute a gross abuse of governmental authority that will offend the substantive component of the Due Process Clause.") (citation omitted); *Kriss v. Fayette Cnty.*, 827 F. Supp. 2d 477, 494 (W.D. Pa. 2011) ("Conscience-shocking behavior in the context of zoning actions requires allegations of corruption, self-dealing, or bias against an ethnic group." (citing *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004))), *aff'd*, 504 F. App'x 182 (3d Cir. 2012); *Highway Materials, Inc. v. Whitemarsh Twp.,* 386 F. App'x 251, 258 (3d Cir. 2010) ("Even a scheme to improperly apply ordinances, treat a property owner differently from nearby owners, actively inhibit a property owner's opportunity to develop its land, and intentionally disregard duties under Pennsylvania state law does not amount to behavior that shocks the conscience.").

20

If true, the allegations against the defendants may be actionable elsewhere. But the substantive due process claim asserted here is simply not cognizable under the federal Constitution.

*Count IV – Claim for damages pursuant to plaintiff's "deprivation of equal protection of the law"*

The plaintiff alleges that the defendants treated it differently from similarly situated demolition-permit applicants and thereby deprived it of equal protection of the laws in violation of the Fourteenth Amendment. (Doc. No. 1 ¶ 50.) The Complaint alleges that the defendants' actions have prevented the plaintiff from demolishing the House, which imposes recurring costs and prevents the Property's sale to another developer. (*Id.* ¶ 51.) The plaintiff seeks damages and injunctive relief requiring the City to issue the permits the plaintiff seeks. (*Id.* ¶ 52.)

The Equal Protection Clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "States may not 'make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference.'" *Ogle v. Sevier Cnty. Reg'l Plan. Comm'n*, 838 F. App'x 913, 921 (6th Cir. 2020) (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)).

To state a "class-of-one" equal protection claim based on selective enforcement, a plaintiff must allege that "[1] she has been intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Johnson v. Morales*, 946 F.3d 911, 939 (6th Cir. 2020) (White, J., concurring) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). "However, a comparator must be 'similarly situated in all relevant

21

respects.'" *Fouts v. Warren City Council*, 97 F.4th 459, 470 (6th Cir. 2024) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 865 (6th Cir. 2012)), *cert. denied*, No. 24-155, 2024 WL 4486379 (U.S. Oct. 15, 2024).

Gracey argues that it has stated a class-of-one equal protection claim based on selective enforcement. (Doc. No. 39 at 21–23, 35–36.) The defendants argue that Gracey has failed to state a claim because it has not pled adequate facts from which the court can infer that the defendants treated the plaintiff differently from similarly situated permit applicants. (Doc. No. 13-1 at 20.) Further, the defendants argue that the Complaint "fails to plead any specific facts showing *how* other permit applicants are/were similarly situated to the Plaintiff . . . [or] *who* such similarly situated applicants are/were." (*Id.* at 21 (emphasis in original) (citing Doc. No. 1 ¶¶ 23, 50(a)).)

It is "no easy task" to plead a "class-of-one" equal protection claim. *Andrews v. City of Mentor*, 11 F.4th 462, 478 (6th Cir. 2021) (Larsen, J., concurring in part and dissenting in part). The requirement that the comparators be similarly situated "must be enforced with particular rigor in the land-use context because zoning decisions 'will often, perhaps almost always, treat one landowner differently from another.'" *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (quoting *Olech*, 528 U.S. at 565 (Breyer, J., concurring)).

The Complaint's two factual contentions regarding differential treatment are insufficient to state a claim for relief. The plaintiff's first allegation—that "[p]rior demolition permits were issued by the Defendants for structures located in the Downtown Urban Design Overlay District without the interplay and approval by the Commission Design Review Board" (Doc. No. 1 ¶ 23)— does not even specify that the owners of those structures were parties other than the plaintiff. And given the plaintiff's description of its work as "sole[ly]" the "acquisition of distressed real estate" within Clarksville's central business zone for development—either by demolition or conversion

of existing buildings—(No. 16-1 ¶¶ 3–4), it is possible that those structures belonged to the plaintiff. While the court must accept the facts pleaded as true and draw all reasonable inferences in favor of the plaintiff, the Complaint contains no facts, on this point, for the court to so infer.

The plaintiff's second allegation in support of its class-of-one claim is: "Compared with other similar situations involving other property owners in the City of Clarksville seeking a Demolition Permit and a Utility Disconnect Permit, the Plaintiff, Gracey, has been adversely selectively treated." (Doc. No. 1 ¶ 50(a).) This statement, unlike the first, claims that the plaintiff was treated differently from other *owners*. But it does not say anything about who those owners are or in what way they were similarly situated. The plaintiff provides no more than a conclusory statement of adverse treatment that cannot be accepted as true, even at the motion to dismiss phase. *Iqbal*, 556 U.S. at 678.

In defense of its pleading, the plaintiff points this court to the standard articulated in an unpublished decision from the District of New Jersey. There, the court wrote that a "complaint must merely contain sufficient allegations of the existence of similarly situated individuals to nudge the claim across the line from conceivable to plausible." *Toll Bros. v. Twp. of Moorestown*, No. CIV.A. 10-4843, 2011 WL 2559507, at *6 (D.N.J. June 27, 2011) (citing *Mann v. Brenner*, 375 F. App'x 232, 238–39 (3d Cir. 2010)). The court in *Toll Brothers* denied the defendant's motion to dismiss for failure to state a claim because the plaintiff "ha[d] supported its class-of-one claim with detailed factual allegations that document a consistent and deliberate pattern of disparate treatment from other water users within Moorestown's water franchise area." *Id.* at *7. The court contrasted the case before it with a Third Circuit decision holding that a developer who was denied a sewer easement from the township failed to adequately plead a class-of-one claim because he "simply alleged that he was treated differently from 'other similarly situated residential

23

and commercial developers.'" *Id.* at *6 (quoting *Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011)).[15] In the case before this court, the plaintiff's sole factual contention about similarly situated applicants likewise fails to nudge the claim across the plausibility line. Count IV will therefore be dismissed. As discussed above, the court does not consider the plaintiff's Initial Disclosure (Doc. No. 39-3), which it says contains "a list of seven similarly situated entit[i]es." (Doc. No. 39 at 22.)

*Count I – Violation of the Zoning Code*

The plaintiff alleges that the Clarksville Zoning Ordinance exempts houses like the plaintiff's from the Downtown District's provisions and, therefore, that it need take no further action—other than having filed an application with the City—to secure a demolition permit. (Doc. No. 1 ¶ 40.) The plaintiff seeks a declaration to that effect under 42 U.S.C. 1983, as authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57. *Id.* ¶ 41. On their own, however, Section 1983, the Declaratory Judgement Act, and a Federal Rule of Civil Procedure provide no substantive federal right the deprivation of which provides grounds for relief.

Section 1983 does not provide an independent cause of action. *See Westbrook v. Bonner*, No. 2:23-cv-02094-SHL-atc, 2024 WL 4010307, at *4 (W.D. Tenn. Aug. 30, 2024) ("Because § 1983 is not a standalone claim, [the plaintiff] needs a constitutional hook for her claim." (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979))). The Declaratory Judgment Act creates a remedy where the district court already has jurisdiction, but "[i]t does not create subject matter jurisdiction where none otherwise exists." *King v. Sloane*, 545 F.2d 7, 8 (6th Cir. 1976); *see also Louisville &*

---

[15] The *Perano* court added: "Without more specific factual allegations as to the allegedly similarly situated parties, he has not made plausible the conclusion that those parties exist and that they are like him in all relevant aspects. Accordingly, Perano has failed to state an Equal Protection claim." *Perano v. Twp. Of Tilden*, 423 F. App'x 234, 238–39 (3d Cir. 2011).

24

*Nashville R. Co. v. Donovan*, 713 F.2d 1243, 1245 (6th Cir. 1983) ("[T]he Declaratory Judgment Act . . . is not an independent source of federal jurisdiction.") (citations omitted). And it is merely "procedural, leaving substantive rights unchanged." *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 199 (2014) (citations and internal quotation marks omitted). Rule 57 confers neither a substantive right nor jurisdiction. The Enabling Act provides that the Federal Rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. § 2072(b). Similarly, Rule 82 states that the Federal Rules "do not extend or limit the jurisdiction of the district courts."

In Count I, the plaintiff seeks a declaration interpreting a municipal ordinance and applying that interpretation to this case. "The district courts may decline to exercise supplement jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).[16] Because the court will dismiss the other counts, over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over the remaining claim and will dismiss Count I. A Tennessee "court should have the opportunity to consider the merits of the Plaintiff's state law claim." *Aquilina v. Wriggelsworth*, 759 F. App'x 340, 348 (6th Cir. 2018) (affirming the lower court and finding no abuse of discretion in the district court's decision not to exercise supplemental jurisdiction) (citation omitted); *see also Prows v. City of Oxford*, No. 1:23-CV-330, 2024 WL 4451572, at *13 (S.D. Ohio Jan. 24, 2024), *R. & R. adopted*, No. 1:23-CV-330, 2024 WL 4343658 (S.D. Ohio Sept. 30, 2024) (declining to exercise supplement jurisdiction over a violation of "Ohio Municipal Home Rule," which was asserted, but not as a "discrete claim or count[]," in the complaint); *DeCasso v. City of Cleveland*, No. 1:11-CV-2644,

---

[16] The Complaint does not assert that this court has supplemental jurisdiction under 28 U.S.C. § 1367, but "Rule 8(a)(1) does not require formalistic statutory invocations." *Bilal v. Rotec Indus., Inc.*, No. 03 C 9220, 2004 WL 1794918, at *2 (N.D. Ill. Aug. 5, 2004) (citing *Rohler v. TRW, Inc.*, 576 F.2d 1260, 1264 (7th Cir. 1978)).

25

2012 WL 3552649, at *3 (N.D. Ohio Aug. 16, 2012) (declining to exercise supplemental jurisdiction because claims implicating municipal ordinances, among others, "are most appropriately heard at the state court level") .

E.    Remaining defenses

Because the court will grant the defendant's 12(b)(6) motion for failure to state a claim, as to all of the Complaint's counts, it does not address qualified immunity.[17] The court will also not address the defendant's 12(b)(4) motion for insufficient process, 12(b)(5) motion for insufficient service or process, or 12(b)(7) motion for failure to join a party under Rule 19.

V.    CONCLUSION

For the reasons set forth herein, the Motion to Dismiss (Doc. No. 11) will be granted, and the Complaint will be dismissed in its entirety. Count I will be dismissed without prejudice; Counts II–IV will be dismissed with prejudice.

ALETA A. TRAUGER
United States District Judge

---

[17] Moreover, qualified immunity is "generally a 'bad fit' for a motion to dismiss based on the pleadings." *Freeman v. Spoljaric*, 667 F. Supp. 3d 636, 656 (S.D. Ohio 2023) (quoting *Siefert*, 951 F.3d at 761); *see also Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015) ("it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity").

26